UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| ERNEST FOSTER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>AMERICAN FIRE AND CASUALTY )<br>COMPANY and PHILADELPHIA )<br>INDEMNITY INSURANCE COMPANY, )<br>)<br>Defendants. | Civil No. 13-426-GFVT<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

*** *** *** ***

After sustaining injuries in an automobile accident, Plaintiff Ernest Foster sought underinsured motorist (UIM) benefits from Defendants American Fire and Casualty Company and Philadelphia Indemnity Insurance Company. The parties failed to settle Foster's claim, so he brought this action claiming breach of contract and bad faith. Both defendants have moved to bifurcate trial and stay discovery on Foster's bad faith claims until the underlying contract claim for UIM benefits is resolved. The Court agrees that bifurcation is appropriate and will **GRANT** Defendants' motions.

I

On June 8, 2008 Plaintiff Ernest Foster was involved in an auto accident with Gary Washabaugh. As a result of the knee and leg injuries he sustained during the collision, Foster underwent knee surgery on October 29, 2009. [Amended Compl., R. 26 at ¶ 14]. Since then, he

has been unable to return to his work as an auto mechanic, and his doctors' permanent restrictions on his activity leave him totally disabled. [*See id*., R. 26 at ¶¶ 14, 29.] Foster settled with Washabaugh and recovered the policy limit ($25,000) from Washabaugh's insurer. [*See* Pl.'s Resp., R. 37 at 1.]

Foster alleges that his medical expenses, wage loss, and impairment exceeded $25,000, [*see* Amended Compl., R. 1-2 at ¶¶ 6-7], so he sought underinsured motorist (UIM) benefits from his insurers, American Fire and Casualty Company and Philadelphia Indemnity Insurance Company. Each of the insurers eventually agreed to provide UIM coverage for Foster's expenses arising from the accident. [Amended Compl., R. 26 at ¶ 28.] On three separate occasions, the insurers offered a combined $7,500 settlement for Foster's UIM claims. [Amended Compl., R. 26 at ¶¶ 33; 36-37; 51.] Foster declined each of the three offers, claiming that full compensation for his lost wages and future impairment was at least $160,000, his UIM policy limit. [Amended Compl., R. 26 at ¶¶ 34; 39; 51.]

Foster then filed this action claiming breach of his insurance contract and seeking payment of UIM benefits. [Amended Compl., R. 26 at 2.] He later added statutory and common law claims alleging that the insurers acted in bad faith in failing to settle Foster's claims. [R. 26 at ¶¶ 55-62; ¶¶ 63-70; ¶¶ 71-76.]

Philadelphia Indemnity and American Fire each filed motions to bifurcate Foster's underlying UIM coverage claim from his bad faith claims pursuant to Federal Rule of Civil Procedure 42(b). The insurers also move this Court to stay discovery on the bad faith claims until the contract claim is resolved. [R. 28, 36.]

II

A

Federal Rule of Civil Procedure 42(b) provides that, in order to promote "convenience, to avoid prejudice, or to expedite and economize," a court may try any claim separately from the remaining claims. Fed. R. Civ. P. 42(b). This decision is within the sound discretion of the court. *Smith v. Allstate Ins. Co.*, 403 F.3d 401, 407 (6th Cir. 2005). In determining whether separate trials are appropriate, a court should consider several factors, including "the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy." *Wilson v. Morgan,* 477 F.3d 326, 339 (6th Cir. 2007) (internal quotation marks and citations omitted). Courts look to case-specific facts in this determination, and the party seeking bifurcation has the burden of showing that separation of issues is the most appropriate course. *Weathers v. Healthcare Servs. Grp., Inc.*, No. 3:13-CV-01196-TBR, 2014 WL 3349752, *1 (W.D. Ky. July 9, 2014).

B

In this diversity action, the Court applies the substantive law of Kentucky. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Kentucky generally requires that breach of insurance contract and bad faith insurer claims be tried separately. *Wittmer v. Jones*, 864 S.W.2d 885 (Ky. 1993). The Kentucky Supreme Court in *Wittmer* offered two reasons for requiring bifurcation in this context. First, evidence regarding liability insurance – central to a bad faith claim but irrelevant to a determination of the tortfeasor's liability – may be unnecessary and unfairly prejudicial on the preliminary question of liability. *Parrish v. State Farm Mut. Auto. Ins. Co.*,

2014 U.S. Dist. LEXIS 5055, *2 (W.D. Ky. Jan. 15, 2014) (citing *Wittmer*, 864 S.W.2d at 891).

Second, because the resolution of a contract claim could be dispositive for the entire case, the interests of judicial economy are often better served by bifurcation. *Nationwide Mut. Fire Ins. Co. v. Jahic*, 2013 U.S. Dist. LEXIS 1798, *8, 2013 WL 98059 (W.D. Ky. Jan. 7, 2013) ("[C]ourts have consistently bifurcated cases where resolution of a single claim would be dispositive of the entire case."); *e.g.*, *Smith v. Allstate Ins. Co.*, 403 F.3d 401, 407 (6th Cir. 2005) (affirming bifurcation of proceedings where plaintiffs' bad faith claims depended on the success of their contract claims). Under Kentucky law, three elements must be shown in order to make out a bad faith case:

> (1) the insurer is obligated to pay the claim under the terms of the policy; (2) the insurer lacks a reasonable basis in law or fact for denying the claim; and (3) the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Bruckner v. Sentinel Ins. Co., LTD,* No. 09-CV-195-JBC, 2011 U.S. Dist. LEXIS 13365, 2011 WL 589911, at *2 (E.D. Ky. Feb. 10, 2011) (citing *Wittmer*, 864 S.W.2d at 890). Specifically in the UIM context here, an insurer is obligated as a supplemental insurer for UIM "only to the extent that the tortfeasor's liability coverage is insufficient." *Shearer v. Ohio Cas. Ins. Co.*, No. 5:12-cv-00188-JMH, 2012 WL 4338675 (E.D. Ky. Sept. 20, 2012). As such, until a plaintiff can prove that the insurer is obligated to pay her UIM benefits, she cannot make out a prima facie case for bad faith.

Analogizing to *Wittmer* and its progeny, Philadelphia Indemnity and American Fire argue that bifurcation is necessary because Foster's action for bad faith depends on the threshold

determination that they, the insurers, are obligated to pay the UIM claim. The insurers also argue that bifurcation will avoid prejudice that could arise from discovery of privileged documents and confusion of the issues by the jury.

Foster points out that, unlike *Wittmer*, this is a first-party claim.[1] He notes that some federal courts in Kentucky have declined to bifurcate bad faith claims in first-party cases. *E.g.*, *Woody's Rest., LLC v. Travelers Cas. Ins. Co of Am.*, 2014 U.S. Dist. LEXIS 2305 (E.D. Ky. Jan. 9, 2014); *Lively v. USAA Cas. Ins. Co.*, 2009 U.S. Dist. LEXIS 35520 (E.D. Ky. Apr. 24, 2009); *Colvin v. Am. Bankers Ins. Co.*, 2006 U.S. Dist. LEXIS 19189 (W.D. Ky. Apr. 11, 2006); *Tharpe v. Ill. Nat'l Ins. Co.*, 199 F.R.D. 213 (W.D. Ky. 2001). The common thread in the cases denying bifurcation is that – based on the particular facts of each case – the factual and legal issues in a plaintiff's contract claim are "inextricably intertwined" with his bad faith claims. *E.g.*, Woody's Rest., 2014 U.S. Dist. LEXIS 2305, at *7.

But, as other courts have recognized, the unique UIM context in the present case makes these cases distinguishable, and Foster has not shown how his claims are "intertwined." Federal courts in Kentucky agree that bifurcation is often appropriate in the UIM context, since a plaintiff's action for bad faith cannot be viable until she first shows that the insurer is contractually obligated to pay her UIM claim. *E.g.*, *Parrish v. State Farm Mut. Auto. Ins. Co.*, 2014 U.S. Dist. LEXIS 5055, *2 (W.D. Ky. Jan. 15, 2014); *Shearer*, 2012 WL 4338675; *Durbin v. State Farm Mut. Ins. Co.*, 2001 WL 1793734, *1 (W.D. Ky. Mar. 22, 2001). On nearly identical facts, Judge Hood bifurcated the trial in *Shearer v. Ohio Casualty Insurance Company,*

---

[1] *Wittmer* was a third-party claim in which the injured motorist brought suit against her tortfeasor for liability and against her tortfeasor's insurer for its bad faith in settlement negotiations. Here, however, Foster has only sued his *own* insurers.

5

2012 WL 4338675 (E.D. Ky. Sept. 20, 2012).  After Plaintiff Shearer was injured in an auto accident, she settled with the other driver.  She then filed a claim with her UIM carrier seeking coverage of additional medical expenses and lost wages.  The insurer did not pay the full amount of the plaintiff's claims, so she filed suit, alleging breach of contract and bad faith failure to settle. Concluding that bifurcation was necessary, the *Shearer* Court distinguished the line of cases denying bifurcation: In a UIM case, the court reasoned, a plaintiff's action for bad faith was not intertwined with her contract claim, but instead depended whether the insurer was contractually obligated to pay the UIM claim in the first place. *Shearer*, 2012 WL 4338675 at *3.

In the present case, Foster must first establish that he is entitled to UIM benefits.  This determination will involve evidence of Foster's relative allocation of fault in the accident and the extent of his injuries. Foster's bad faith claim, on the other hand, will inquire into the insurers' reasonableness in handling of Foster's UIM claim, including adjustment issues and Foster's three settlement offers. These inquiries are not "inextricably intertwined," but will instead rely on different evidence and different legal arguments.  Since Foster's bad faith claims depend on the success of his contract claims, bifurcation is appropriate here.

Foster also argues that in this first-party context, where there is no at-fault party who could be "prejudiced by the mentioning of insurance at trial," defendant insurers are not at risk of any prejudice. [Pl. Resp., R. 37 at 3.]  The *Wittmer* Court reasoned that bifurcation would better protect the rights of the two differently situated defendants – the tortfeasor and the tortfeasor's insurer – since "liability insurance should not be interjected needlessly into the trial of a negligence case." *Wittmer*, 864 S.W.2d at 891. While this *particular* variety of prejudice is not present here, other courts have found that trying liability and bad faith claims together in a UIM

case can still prejudice an insurer. *E.g.*, *Shearer*, 2012 WL 4338675 at *2 ("[Declining bifurcation] would unnecessarily interject the issue of bad faith into the primary dispute of liability, making discovery more difficult and complicating the issues at trial."); *Parrish*, 2014 U.S. Dist. LEXIS 5055 at *3 (noting that a bad faith claim would require evidence of coverage limits, which is irrelevant to a contract claim); *Durbin*, 2001 WL 1793734 at *3 (noting that discovery on the bad faith claim could reveal trial strategies aimed at containing the verdict within the tortfeasor's coverage limits).

If Foster's bad faith and contract claims were tried concurrently, the jury would be informed about the parties' settlement negotiations and coverage limits. This evidence is not necessary to his contract claim and could potentially lead to confusion of the issues for the jury. Given the potential prejudice that could arise from trying these claims together, as well as the dispositive nature of plaintiff's contract claim, the Court finds it is appropriate to bifurcate the trial in this matter.

### III

The defendant insurers also move this Court to stay discovery on the bad faith claims until liability is established. The insurers argue that allowing discovery at this stage would yield privileged documents, prejudicing the Defendants and increasing the costs of discovery. "Trial courts have broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Gettings v. Bldg. Laborers Local 310 Fringe Benefits Fund,* 349 F.3d 300, 304 (6th Cir. 2003) (citing *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999). Staying discovery of a plaintiff's bad faith claim pending resolution of the underlying contract claim can "prevent prejudice, eliminate unnecessary litigation expenses, and

7

. . . further the interests of judicial economy." *Jahic*, 2013 U.S. Dist. LEXIS 1798, *9-10 (collecting federal Kentucky cases).

Foster's discovery requests may seek potentially privileged documents and information from the insurers' claims evaluations. Thus, permitting joint discovery "may prejudice [the insurer defendants] before it is clear whether [Foster] can even proceed with a bad faith claim by establishing a breach of contract." *Brantley v. Safeco Ins. Co. of Am.*, 2011 U.S. Dist. LEXIS 138111, *7, 2011 WL 6012554 (W.D. Ky. Dec. 1, 2011) (citation and internal quotation marks omitted). Further, since the viability of Foster's bad faith claim turns on the success of his contract claim, failure to issue a stay of may result in unnecessary discovery. Given the possibility of premature disclosure of this protected information, as well as the interests of judicial economy here, stay of discovery as to Foster's bad faith claims is warranted.

IV

Accordingly, for the aforementioned reasons, it is hereby **ORDERED** as follows:

(1) The Motions to Bifurcate Trial and Stay Discovery on Foster's bad faith claims brought by Defendants American Fire and Casualty Company and Philadelphia Indemnity Insurance Company [**R. 28, 36**] are **GRANTED**; and

(2) The bad faith claims at issue in this matter (Counts II through IV of the Amended Complaint) are **BIFURCATED** from the UIM claim (Count I) for both trial and discovery, and discovery as to Foster's bad faith claims is **STAYED** pending resolution of his UIM claim.

(3) An Order setting a Status Conference regarding the schedule going forward in this case will be entered contemporaneously with this Order.

This the 8th day of January, 2015.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge