UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| ERNEST FOSTER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 13-426-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| AMERICAN FIRE AND CASUALTY | ) | **&** |
| COMPANY, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

After Plaintiff Ernest Foster was injured in an auto accident with an underinsured motorist, he sought UIM benefits from his two insurers, Philadelphia Indemnity Insurance Company and Defendant American Fire and Casualty Company. American Fire now moves for partial summary judgment on the issue of priority among these two insurers. [*See* R. 70-7]. American Fire argues that the two policies apply on a pro-rata basis, while Foster claims that American Fire is the primary insurer. The Court agrees with American Fire – though for reasons different than those argued in its brief – and will GRANT its motion for partial summary judgment.

I

On June 8, 2008, Ernest Foster was driving his Ford Ranger pickup truck when he was struck by another driver, Gary Washabaugh. At the time of the collision, Foster was the named insured under the two insurance policies at issue here. His 1988 Ford Ranger is insured by

American Fire. That policy includes UIM coverage up to $100,000. Foster also owns a 1949 Ford Anglia, which is insured by Philadelphia with up to $60,000 in UM and UIM motorist coverage. Foster, who suffered serious injuries to his knee, settled with Washabaugh for his policy limits of $25,000. He also received $50,000 in basic and added reparations benefits (BRB and PIP) from American Fire. Alleging that his medical expenses, lost wages, and impairment exceeded that $75,000 amount, Foster sought UIM benefits from both of his insurers. American Fire and Philadelphia agreed to provide coverage, but the parties were unable to reach a settlement. Foster filed this action, claiming UIM benefits, breach of contract, and bad faith failure to settle.[1] He later settled his claims with Philadelphia for an undisclosed amount. [R. 86].

Shortly before the final pre-trial conference in this case, American Fire filed a Motion for Leave to File a Motion for Partial Summary Judgment, or in the Alternative, a Motion for Declaratory Judgment. [R. 70]. Foster filed a response to the substantive motion for partial summary judgment, [R. 101], and American Fire submitted an expedited reply, [R. 105], so as to allow the Court to resolve the motion prior to trial.

II

Rule 56 provides that a party may move for summary judgment on either an entire claim or defense or a "part of each claim or defense." Fed. R. Civ. P. 56. Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex*

---

[1] The Court granted the Defendants' motions to bifurcate and stay discovery on Foster's bad faith claims pending resolution of this contract claim. [R. 45].

*Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

This Court is tasked with determining a purely legal issue: the priority of the two UIM insurance policies that cover Foster's injuries. Because it is not uncommon for two or more insurers to be liable for the same loss, insurance companies have long included "other insurance" provisions in their policies. Two clauses common to such provisions are the "pro-rata clause" and the "excess clause." A pro-rata clause provides that if the injured person is covered by other insurance, the insurer is only obligated to cover the proportion that its limits of liability bear in relation to the total limits of liability under all available policies. Robert D. Monfort, Kentucky Motor Vehicle Insurance Law § 12.2 (2014-2015 ed.). An excess clause provides that the insurer will only provide coverage for amounts exceeding the injured person's recovery from the other insurer. *Id*. at § 12.3.

Recent Kentucky decisions have brought sweeping changes to this area of insurance law. Previously, where two "other insurance" provisions were "mutually repugnant," with each purporting to make the other's coverage primary, a court was required to presume that both provisions were void and order that coverage be apportioned between the two insurers, up to the limits of liability. *E.g.*, *Ohio Cas. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 511 S.W.2d 671 (Ky. 1974); *Gov. Emp. Ins. Co. v. Globe Indem. Co.*, 415 S.W.2d 581 (Ky. 1967); *Great Am. Ins. Co. v. Lawyers Mut. Ins. Co. of Kentucky*, 492 F. Supp. 2d 709, 712 (W.D. Ky. 2007). In

*Kentucky Farm Bureau Mutual Insurance Co. v. Shelter Mutual Insurance Co.*, 326 S.W.3d 803 (Ky. 2010), however, the Kentucky Supreme Court rejected the automatic apportionment approach in favor of a bright-line rule for liability insurance: Where two excess clauses are inconsistent, "the vehicle owner's [liability] insurance is primary," and the non-owner driver's liability insurance is secondary. *Id.* at 811. The Court reasoned that this rule avoids the problematic side-effects of the repugnancy rule – delayed payments, "drafting wars," and increased litigation, as well as the "exceedingly inequitable" result that automatic apportionment can allow an insurer to "collect premiums from its insured while hiding behind an excess clause that purports to subvert its primary liability." *Shelter*, 326 S.W.3d at 812. Instead, the bright-line rule follows the "spirit and intent" of the Kentucky Motor Vehicle Reparations Act. *Id.* at 810; *see also Progressive Max Ins. Co. v. Nat'l Car Rental Sys., Inc.*, 329 S.W.3d 320 (Ky. 2011) (applying *Shelter* to the basic reparations benefits context to hold that priority lies with the vehicle owner's insurance rather than the driver's insurance when BRB are owed to an injured third party). *But see Owners Ins. Co. v. State Auto Prop. & Cas. Co.*, 977 F. Supp. 2d 708 (W.D. Ky. 2013) (declining to extend *Shelter* to the context of homeowners' insurance liability coverage).

In a well-reasoned opinion, the Kentucky Court of Appeals recently extended *Shelter*'s logic to the uninsured motorist context. *Countryway Ins. Co. v. United Fin. Cas. Co.*, 2014 Ky. App. LEXIS 12 (Ky. Ct. App. Jan. 24, 2014), *discretionary rev. denied*, 2015 Ky. LEXIS 39 (Feb. 11, 2015). *Countryway* announced an analogous bright-line rule to resolve conflicts between two UM policies: "[T]he repugnancy rule and apportionment are no longer applicable where two excess/other insurance UM provisions clash. Instead, the UM policy covering the

4

injured person . . . will be deemed primary." *Id.* at *18.  In that case, a passenger was injured when an uninsured motorist struck the tractor in which she was riding.  Both the tractor driver's insurer, United, and the injured passenger's insurer, Countryway, provided that the other insurer would bear the primary obligation.  The Court of Appeals reasoned that the policy rationales that drove the *Shelter* Court to reject the repugnancy rule "appl[y] with equal force when dealing with UM policies . . . ."  *Id.* at *15.  Efficient payment of claims, avoidance of a "battle of the forms," and reduction in litigation, it held, are important policy concerns in both UM insurance and liability insurance.  *Id.*  But the Court explained that acceptance of Shelter's rationale did not mean that its follow-the-vehicle liability insurance rule applied in the UM insurance context.  *Id.*  Instead, the unique nature of UM insurance mandated a different kind of bright-line rule.  "Kentucky courts have plainly held that UM coverage follows the person, not the vehicle, regardless of whether the insured is injured as a motorist, a passenger or as a pedestrian." *Id.* at *16 (citations omitted).  Because UM coverage is personal to the insured, the Court of Appeals reasoned, "it should follow the person, not the vehicle, as a matter of priority."  *Id.* at *18.  The passenger's insurer – and not the tractor driver's insurer – was therefore deemed the primary insurer.

American Fire's brief is premised on the contention that the two clauses here are mutually repugnant and that pro-rata apportionment is mandatory.  But *Countryway* abrogated this repugnancy-therefore-apportionment test in the very similar context of UM insurance, and its rationales and conclusion apply equally in the UIM context.  A federal court sitting in diversity must "follow the decisions of the state's highest court when that court has addressed the issue."  *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009)

(internal quotation marks and citations omitted).  A state appellate court decision is persuasive authority "unless it is clear the state's highest court would decide the issue differently."  *Owners Ins.*, 977 F. Supp. 2d at 710 (citations omitted).  The Kentucky Supreme Court declined discretionary review of *Countryway*; it has already extended the rule in *Shelter* beyond the liability insurance context.  *See Progressive Max Ins.*, 329 S.W.3d 320.  Moreover, Kentucky courts have long held that UIM coverage – precisely like UM coverage – is "personal to the insured . . . and is not connected to any particular vehicle."  *Sparks v. Trustguard Ins. Co.*, 389 S.W.3d 121, 126 (Ky. Ct. App. 2012) (citing *Dupin v. Adkins*, 17 S.W.3d 538, 543 (Ky. Ct. App. 2000)).  The Court is persuaded that, for the reasons set forth in *Countryway*, the Kentucky Supreme Court would extend *Shelter* to the UIM context, reject the repugnancy and apportionment rule, and adopt the same bright line rule set forth in *Countryway*.  Accordingly, this Court will not engage in the repugnancy and apportionment analysis.

Instead, the Court's analysis begins with the contractual language itself.  The *Countryway* rule assumes that the two policies are irreconcilable[2] – but that is not the case here.  American Fire's policy generally provides coverage for its insured, Mr. Foster, for injuries sustained by underinsured motorists.  Where coverage from another insurer is also available, however, the policy's "Other Insurance" provision kicks in:

> **OTHER INSURANCE**
>
> If there is other applicable insurance similar to the insurance provided by this endorsement, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle:

---

[2] "[T]he repugnancy rule and apportionment are no longer applicable *where two excess/other insurance UM provisions clash*." *Countryway*, 2014 Ky. App. LEXIS 12 at *18 (emphasis added).

6

      **1.** You do not own, including any vehicle while used as a temporary substitute for "your covered auto"; or

      **2.** Owned by you or any "family member" which is not insured for this coverage under this policy;

[s]hall be excess over any other collectible insurance similar to the insurance provided by this endorsement.

In other words, American Fire provides that, where other similar UIM coverage exists, the general rule is that it will cover only its proportional share of the loss. There are two limited exceptions to this rule set forth in the "excess clause:" If (1) the accident occurs in a vehicle that the insured does not own, or (2) the accident occurs in a vehicle owned by the insured but covered under another policy, then American Fire will provide only excess coverage – not the general pro-rata share.

    American Fire's excess clause is not applicable under these facts. The accident occurred in the Ford Ranger, which is owned by Foster and is covered under the American Fire policy. Since neither of these exceptions applies, the contract calls for pro rata coverage under its general "other insurance" provision.[3]

---

[3] Foster interprets the American Fire contract to mean that where the excess clause is inapplicable, American Fire is automatically deemed the sole primary insurer. This interpretation overlooks the clear and express requirement of the Other Insurance clause that where two insurance policies are available, coverage will be apportioned, unless the exceptions triggering the excess clause apply. "The words employed in insurance policies, if clear and unambiguous, should be given their plain and ordinary meaning." *Nationwide Mut. Ins. Co. v. Nolan,* 10 S.W.3d 129, 131 (Ky. 1999) (citing *Buckingham Life Ins. Co. v. Winstead*, 454 S.W.2d 696, 697 (Ky. 1970)). Nothing in the "Other Insurance" provision suggests that its terms – including its pro-rata clause – are inapplicable if the excess clause cannot be satisfied. This Court must "give effect to what the parties expressly agreed upon" in the pro-rata clause contained at the beginning of the Other Insurance provision. *Id.* (citations and internal quotation marks omitted).

Philadelphia's "Other Insurance" clause provides:

**OTHER INSURANCE**

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the policy:

**1.** Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

**2.** Any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any collectible insurance providing such coverage on a primary basis.

**3.** If the coverage under this policy is provided:

> **a.** On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.
>
> **b.** On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

Philadelphia's excess clause in numeral 2 applies only where the accident occurred in a vehicle that is not owned by the insured. Again, this condition precedent is not satisfied, because Foster owns the Ford Ranger in which this accident took place. Because the only contractual provision triggering excess coverage is inapplicable, Philadelphia's coverage is governed by sub-part (a) of its pro-rata clause in numeral 3.[4]

---

[4] That Philadelphia has settled with Foster does not affect this Court's interpretation of the two contracts, since Foster "must be given the opportunity to prove his entitlement to coverage regardless of prior settlements." *Metcalf v. State Farm Mut. Auto. Ins. Co.*, 944 S.W.2d 151, 153 (Ky. Ct. App. 1997).

These two pro-rata clauses are not inconsistent. Both policies provide that the insurer will pay only its respective share of the loss. American Fire limits its coverage to "the proportion that [its] limit of liability bears to the total of all applicable limits." Philadelphia similarly limits its coverage "the share of the loss that [its] limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis." Accordingly, because neither policy's excess clause or escape clause applies, and because the two pro-rata clauses can be read consistently, proration is contractually required under the unique facts of this case. *Cf. Calvert Fire Ins. Co. v. Stafford*, 437 S.W.2d 176 (Ky. 1969) (applying consistent pro-rata clauses where an insurer and a lienholder both provided liability coverage on the vehicle).

It should be noted that *Shelter* did not hold that *all* proration is impermissible, nor did it hold that pro-rata clauses were unenforceable. Rather, *Shelter* held that where two excess clauses in an "other insurance" provision conflict, a court should no longer automatically prorate the loss between the two insurers. Pro-rata *clauses* – in which an insurer voluntarily agrees to prorate its coverage in the event that other insurance coverage is available – remain "valid and binding." *Stafford*, 437 S.W.2d at 179; Monfort, *supra*, at § 12.2 (noting that *Shelter* did not overrule *Stafford* and prohibit pro-rata clauses). In fact, the Kentucky Supreme Court in *Shelter* recognized that "the apportionment methods are an attempt at fairness and at times they must be adhered to . . . ." *Shelter*, 326 S.W.3d at 810. Perhaps one of the clearest cases for apportionment arises where, as here, the non-conflicting terms of two insurance policies provide for proration.[5] *Accord Stafford*, 437 S.W.2d at 179 ("Since both policies are valid policies, both

---

[5] *See* Monfort, *supra*, at § 12.2 (opining that notwithstanding *Shelter*, "where a court considers two policies, both with coverage and neither with an applicable excess clause or escape clause, it is theoretically possible that proration could still be the rule").

9

insure the same interest, and both contain the pro-rata loss provision, we are of the opinion that the Staffords' loss should be borne [by both insurers].").

Nor did *Shelter* change the fact that the "parties may contract for such coverage as they wish" and that valid contractual provisions "'must control unless [they] contravene[e] public policy or a statute.'" *Shelter*, 326 S.W.3d at 811 (citing *York v. Kentucky Farm Bureau Mut. Ins. Co.*, 156 S.W.3d 291, 294 (Ky. 2005)). Indeed, proration pursuant to the consistent terms of Foster's two insurance contracts gives effect to both policies and honors an insured's "reasonable expectation" that the coverage he has paid for under each policy will be afforded. *Chaffin v. Kentucky Farm Bureau Ins. Co.*, 789 S.W.2d 754, 756 (Ky. 1990).

Because the insurers' "other insurance" clauses are not in conflict, the Court need not reach the priority analysis under *Countryway* as Foster urges. Accordingly, and pursuant to the terms of their contracts, American Fire and Philadelphia[6] are responsible for their respective proportionate share of any verdict in excess of the benefits that Foster has already received, up to their respective policy limits.[7]

### III

Accordingly, and for the foregoing reasons, it is hereby **ORDERED** as follows:

1. American Fire's Motion for Leave to File a Motion for Partial Summary Judgment, or in the Alternative, Motion for Declaratory Judgment is **GRANTED**;

---

[6] The amount and computational basis of Philadelphia's settlement have not been disclosed, but to the extent either insurer is made to bear more than its proportion of the coverage, either insurer may seek relief through a contribution or indemnity action, if applicable.

[7] American Fire's policy limit of $100,000 accounts for 62.5% of the total of all applicable limits of $160,000.

2. American Fire's Tendered Motion for Partial Summary Judgment, [R. 70-7], shall be **FILED** in the record as of the date of this Order;

3. American Fire's Motion for Partial Summary Judgment is **GRANTED**.

This the 5th day of May, 2015.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge