*ELECTRONICALLY FILED*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

| | | |
|---|---|---|
| **ERNEST FOSTER** | ) | **PLAINTIFF** |
| | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:13-CV-00426-** |
| | ) | **GFTV** |
| | ) | |
| **AMERICAN FIRE AND** | ) | **DEFENDANT** |
| **CASUALTY COMPANY** | ) | |
| | ) | |

---

**DEFENDANT'S MEMORANDUM IN SUPPORT**
**OF ITS MOTION FOR SUMMARY JUDGMENT**

---

The Defendant, American Fire and Casualty Company ("American Fire"), submits the following Memorandum in Support of its Motion for Summary Judgment.

## I. INTRODUCTION

For an actionable tort to exist there must be a duty imposed, a breach of that duty and compensable injury/damages causally connected to the breach. The injuries Plaintiff complains of are not compensable injuries. Furthermore, Plaintiff cannot satisfy the proof requirements for a bad faith claim because American Fire never denied his claim. Plaintiff's disclosed insurance expert evaluated the claim handling using the wrong standard: what an ordinarily prudent insurance company would do in like or similar circumstances, i.e. negligence. Kentucky doesn't recognize "negligent" bad faith.[1] The denial of the claim must be intentional or with reckless disregard – conduct justifying a punitive damage award before there is even a "bad faith" jury issue. Plaintiff suffered no compensable damages and has no valid claim.

---

[1] Exclusion of Plaintiff's Expert, Setcavage, is the subject of a separate *Daubert* motion pending before this Court.

## II. <u>PROCEDURAL HISTORY OF UNDERLYING CLAIM</u>

Plaintiff alleges bad faith against American Fire in the handling of Plaintiff Ernest Foster's underinsured motorist ("UIM") claim stemming from an automobile accident with Gary Washabaugh on June 8, 2008. (*See* Am. Comp., D.E. 26, pp. 2-10). Nearly two years after the accident, Plaintiff settled with Mr. Washabaugh and recovered the minimum required policy limit ($25,000) from Mr. Washabuagh's insurer. (*See* Am. Comp., D.E. 26, p. 3). Because the settlement with Washabaugh was at the full lability policy limits, American Fire had no subrogation rights for the no-fault benefits it paid to Foster. At the time, Plaintiff had an insurance policy with American Fire that provided him no-fault benefits totaling $50,000 (he had purchased additional reparation benefits), which were paid to satisfy Plaintiff's wage loss and medical expenses in December 2011. (*See* E. Foster Dep. #1, D.E. 69-2, 9/29/14, at 155-56). The no-fault benefits were exhausted. In addition to the no-fault benefits, American Fire's policy provided underinsured motorist coverage. (*See* Am. Comp., D.E. 26, p. 2). Plaintiff also had a separate UIM policy with Philadelphia Indemnity Insurance Company ("Philadelphia Indemnity") which he had purchased to provide coverage for one of his classic restored cars. (*Id.*)

On or about November 19, 2013 (over five years after accident), Plaintiff filed suit seeking UIM benefits from his insurers, American Fire and Philadelphia Indemnity. (*See* Initial Complaint, D.E. 1-1). Mr. Foster alleged that his medical expenses, wage loss, and impairment exceeded Mr. Washabaugh's liability policy limits. (*Id*. at 3).

Subsequently, on November 19, 2014 (more than six years after the accident), Plaintiff moved to amend his Complaint to assert extra contractual claims for bad faith against American Fire as well as Philadelphia Indemnity. (*See* Amended Complaint, D.E. 26, 11/19/14). Count II

of his Amended Complaint alleges violations of Kentucky's Unfair Claims Settlement Practices Act, KRS 304.12-230, et. seq., and claims damages in the form of attorneys fees, "emotional distress, inconvenience, financial distress, and other consequential damages" in addition to punitive damages. (*Id*. at 8). Count III alleges violations of the Kentucky Consumer Protection Act ("KCPA"), KRS 367, and claims damages in the form of attorneys fees, financial uncertainty, legal costs, inconvenience, emotion and mental pain and suffering, and punitive damages. (*Id*. at 9). Count IV alleges general bad faith claiming the same damages "as set forth above" and punitive damages. (*Id*. at 10).

Philadelphia Indemnity's UIM coverage was $60,000. (Philadelphia Indemnity's policy, D.E. 70-4). American Fire's policy provides UIM benefits in the amount of $100,000 per person. (American Fire's policy, D.E. 70-3). Coverage under the UIM policies would be afforded **only after** a verdict in excess of $75,000 ($25,000 liability benefits paid, $50,000 no-fault benefits paid). (*See* Memo. Opinion & Order, D.E. 117, 05/05/15, p. 2). On January 8, 2015, this Court bifurcated and stayed discovery on the extra-contractual bad faith claims against American Fire and Philadelphia Indemnity. (Memo. Opinion & Order, D.E 45, 01/08/15). On April 16, 2015, Philadelphia Indemnity was dismissed from the lawsuit as it had reached a settlement agreement of <u>all claims</u> with Plaintiff. (*See* Order, D.E. 86, 04/16/15). The settlement agreement between Plaintiff and Philadelphia Indemnity included Plaintiff's bad faith claims against Philadelphia Indemnity. (*Id*.) Plaintiff received $56,000 from Philadelphia Indemnity. (*See* E. Foster, Dep. #2, 06/14/16, 34:7-13, with a copy attached as **Exhibit 1**).

At the time, there was a motion pending before this court to determine the effect of the "other insurance" clauses contained in both the American Fire and Philadelphia Indemnity UIM policies. (*See* Motion, D.E. 70, 04/08/15). Four days after Philadelphia Indemnity was dismissed,

Plaintiff filed a brief purporting to interpret the American Fire policy to mean that where its "excess clause" is inapplicable, American Fire would be automatically deemed the sole primary insurer. (Plaintiff's Response to Motion, D.E. 101, 04/19/15). This Court rejected Plaintiff's argument and held that the two pro-rata clauses contained in the policies would mandate an excess verdict be apportioned pro-rata between American Fire and Philadelphia Indemnity up to their respective policy limits. (*See* Memo. Opinion & Order, p. 9, D.E. 117, 05/05/15) (stating "because neither policy's excess clause or escape clause applies, and because the two pro-rata clauses can be read consistently, proration is contractually required under the unique facts of this case.") This Court decided the pro-rata issue in May 2015. *Id*. This was the first time a court interpreting Kentucky law had decided this precise question with the involved policy language. Under the Court's ruling, a total verdict of $235,000 or more would have been required to exhaust American Fire's UIM policy limits.

The UIM trial set to go forth between Plaintiff and American Fire on May 18, 2015, involved only disputes over the extent and valuation of Plaintiff's bodily injuries. (*See* Plaintiff's Statement of the Case, D.E. 84, 04/16/15). Part of the medical proof at trial would be the testimony and opinions of Dr. David Jenkinson, the independent medical examiner retained initially by American Fire and Philadelphia Indemnity. David Richardson was the lawyer representing American Fire on the contractual portion of the UIM claim. Mr. Richardson chose Dr. Jenkinson after researching board certified orthopedic surgeons. (*See* D. Richardson Dep. 08/05/16, 16:6-9, with a copy attached as **Exhibit 2**). Mr. Richardson "had not used Dr. Jenkinson in the past other than maybe on one occasion, so [he] wanted to use someone that [he] couldn't be accused of using a physician who would be biased in [his] favor." (*Id*. at 16:21-24). Dr. Jenkinson was scheduled to testify live at the UIM trial, but after a scheduling conflict

prevented him from doing so, the Court granted permission to take his trial deposition. Dr.

Jenkinson wrote in his independent medical examination ("IME") report:

> It is apparent that Mr. Foster had degenerative changes in the right knee which preexisted the accident of June 2008. It appears that in the accident he had a relatively minor contusion but there is no evidence that he had an articular injury that would have had any significant effect on the pre-existing degenerative arthritis.
> …
> The investigation reported no significant acute injury to the knee. It is my opinion that apart from a few weeks of symptomatic treatment he required no further treatment relative to the motor vehicle accident.

(*See*, Dr. Jenkinson report, 10/08/14, p. 12, with a copy attached as **Exhibit 3**).

However, in his deposition, Dr. Jenkinson was asked if he was able to identify any

traumatic conditions in Plaintiff's knee that would have been caused by the motor vehicle

accident and Dr. Jenkinson replied "… [his degenerative arthritis] could have been acute injury. I

can't categorically say one way or the other." (*See* D. Jenkinson Dep., 04/28/15, 29:7-22, with a

copy attached as **Exhibit 4**). Dr. Jenkinson also switched his position with regard to Plaintiff's

future treatment: in his report, Dr. Jenkinson stated "[t]here is no evidence that he suffered a

permanent injury relative to the accident …. It is my opinion that [Plaintiff] requires no current

or future treatment relative to the accident…" (*see* Jenkinson Report, 10/08/14, p. 12, Ex. 2), but

then in his deposition stated a knee replacement is "highly likely." (*See* D. Jenkinson Dep.,

04/28/15, 39:18-21, Ex. 3). Dr. Jenkinson went even further in his deposition and stated he is not

expecting Plaintiff's knee to improve on its own. (*Id*. at 73:14-17).

Mr. Richardson, was intending to call Dr. Jenkinson at trial as the only defense medical

witness. (*See* D. Richardson Dep. 08/05/16, 32:16-19, Ex. 2). However, Mr. Richardson testified

that during his trial deposition "Dr. Jenkinson testified frankly completely contrary to the report

that he had previously submitted to [Mr. Richardson]" on which Mr. Richardson had been

relying. (*Id*. at 22:9-23). This was most certainly a "change of circumstances" (*id*. at 28:5-11) which caused Mr. Richardson's recommendations to American Fire to change. (*Id*. at 29:3-7). Mr. Richardson reported this series of events immediately to American Fire. (*Id*. at 23:5-11). "American Fire continued to follow [Mr. Richardson's advice] as to the resolution of the case." (*Id*, at 29:8-11). American Fire adjuster, Laura Harp-Biven, testified the authority to settle the claim stemmed from this change in Dr. Jenkinson's deposition testimony. (*See* L. Harp-Biven Dep., 08/08/16, 91:4-11, with a copy attached as **Exhibit 5**). Ms. Harp-Biven had a meeting with decision-makers at American Fire. Things had changed … due to Dr. Jenkinson's deposition testimony." (*Id*.).

Before the scheduled UIM trial, American Fire and Plaintiff settled the UIM claim on May 15, 2015, for $91,500 ($8,500 below the policy limits Plaintiff had insisted throughout). (*See* E. Foster, Dep., 06/14/16, 34:7-13, Ex. 1).   The UIM claim against American Fire was dismissed, with prejudice, on July 17, 2015. (*See* Order, D.E. 132, 07/17/15). The Court entered an Order lifting the stay of discovery on the bad faith claim. (*See* Order, D.E. 133, 07/17/15). The settlement amount was accepted as a full and final settlement with the advice of counsel even though Plaintiff, throughout the litigation, insisted he would not accept less than the policy limits of $100,000. (*See* letter from Philip Fairbanks, 12/8/14, with a copy attached as **Exhibit 6**). Indeed, Plaintiff and his lawyer signed a Release attached as **Exhibit 7** agreeing his underinsured motorist claim was "disputed." (Release, p. 2, ¶ 3, Ex. 3). Since then, the parties have been conducting discovery on the extra-contractual claims.

### III. <u>FACTUAL BACKGROUND RELEVANT TO BAD FAITH CLAIMS</u>

Plaintiff alleges American Fire's violations caused him "emotional distress," "emotional and mental pain and suffering," inconvenience, financial distress, financial uncertainty, legal

6

costs, and "other consequential damages." in addition to punitive damages. (*See* Amended Complaint, D.E. 26, 11/19/14, pp. 8-10). Plaintiff also seeks punitive damages. (*Id*.). Despite making claims for emotional and mental suffering, Plaintiff has not sought medical treatment for these alleged damages. Plaintiff admitted he has never been to a psychologist or a psychiatrist or a counselor for a mental problem and he has never been treated for depression. (*See* E. Foster, Dep., 06/14/16, 28:8-12, Ex. 1). Furthermore, Plaintiff admitted he never even personally dealt with American Fire as he let his wife handle communication because she worked in the insurance industry. (*Id*. at 19:17-25; and 47:15-22). Plaintiff did not have any conversations, personally, with American Fire. (*Id*.) Plaintiff admits he does not even recall her repeating anything specific American Fire said to his wife about the automobile accident and that he "just went along with what she said because she was taking care of it." (*Id*. at 20:8-19).

In his pleadings and deposition, Plaintiff admitted he has not incurred financial damages as a result of any alleged bad faith by American Fire. Indeed, Plaintiff's pleadings do not even allege he incurred financial damages, only that he was placed in "financial distress" and "faces long term uncertainty as to his financial future and is forced to unnecessarily incur expenses related to this lawsuit." (*See* Am. Comp. D.E. 26, 11/19/14, pp. 8-10). Plaintiff has not had to pay his lawyers any money out of his pocket. (*See* E. Foster, Dep., 06/14/16, 36:9-11, Ex. 1). Furthermore, when Plaintiff received the money from his insurance companies he used it to pay off his mortgage in full and pay doctor bills before putting the rest in savings. (*Id*. at 27:9-17; and 36:12 through 37:4). The only injuries about which Plaintiff complains are from the <u>accident</u> and those claims have all been settled.

Plaintiff did not suffer any financial damages or physical harm from American Fire's alleged wrongdoing. In fact, Plaintiff's main reason for suing American Fire was because of

everything he went through, worrying about bills, and having to "put everything on hold for the last eight years." (*Id*. at 29:3 through 31:8; and 51:11-22). Despite worrying about bills, Plaintiff went on to admit that he and his wife paid all of their bills, never missed a payment, and never had any bill collectors call them. (*Id*. at 26:15-21; and 28:2-7). When asked why his life was put on hold, Plaintiff said "I can't work on my cars.… I can't travel anymore. I can't go to events. I can't go on vacation, and I can't even play with my grandkids because of my injury and all this aggravation" (referring to his physical injury). (*Id*. at 31:11-22). Pressed further, he said he can't afford going on vacations because he lost his income and his business because he was injured and could not crawl around the cars anymore. (*Id*. at 31:25 through 32:14). These claimed items of damages relate to bodily injuries sustained in the motor vehicle accident and are items of damages against the tortfeasor, claims he has already settled. These are not claimed damages against American Fire for bad faith. A bad faith lawsuit is not a valid way to simply increase liability or UIM policy limits so that more money is available to pay underlying tort damages.

Plaintiff's insurance industry expert, Stuart Setcavage, did not offer testimony as to any alleged damages caused to Plaintiff by American Fire's conduct. (*See* S. Setcavage, Dep., 07/26/16, 10:14-17, copy of pertinent pages attached as **Exhibit 8**). Plaintiff lists Dr. David Jenkinson and Dr. David Burandt, but both of these experts are prepared to testify regarding Plaintiff's injuries sustained in the motor vehicle accident, not any alleged injuries Plaintiff received as a result of American Fire's conduct. (*See* Plaintiff's Expert Witness Disclosure, 6/23/16, copy of pertinent pages attached as **Exhibit 9**).[2]

In regards to his alleged bad faith Against American Fire, Plaintiff has not shown that American Fire ever denied his claim. When asked if his claim was ever denied by American Fire,

---

[2] The use of the depositions are the subject of a separate motion. (*See* Defendant's Motion to Exclude Prior Deposition Testimony of Select Plaintiff's Experts, D.E. 179, 07/21/16).

Plaintiff said he was not sure because his wife dealt with the insurance company. (*Id*. at 22:9 through 23:2). Plaintiff's wife, Bettie Foster, admitted no one at American Fire ever told her they were denying coverage for the UIM claim. (*See* B. Foster, Dep., 08/02/16, 20:6-14, copy of pertinent pages attached as **Exhibit 10**). The claim was never denied because the claim was being investigated, as Plaintiff himself agrees an insurance company should do. (*See* E. Foster, Dep., 06/14/16, 47:23-25, Ex. 1). Plaintiff doesn't blame the insurance company for seeking his medical records. (*Id*. at 48:3-5). When asked if anybody at American Fire had done anything to hurt him on purpose, Plaintiff responded: "Yes and no. Yes, because they didn't – they just took so long to do what they was [sic] supposed to do." As the Court is fully aware, however, when a lawsuit is filed, its progression is not solely up to the insurance company. "[E]ach case has to be handled on its own merit, and some take longer than others to work their way through the system, but primarily the time … is governed by the rules of civil procedure … [and] the trial order or scheduling order." (*See* D. Richardson Dep. 08/05/16, 32:16-19, Ex. 2).

Ignoring that Kentucky does not have a negligence standard for bad faith Plaintiff's "expert" reviewed the matter through the lens of what "an ordinary prudent insurance company should do in like or similar circumstances" – an inquiry wholly immaterial to the bad faith inquiry under Kentucky law. (*See* S. Setcavage, Dep., 07/26/16, 9:21-25, Ex. 8). Mr. Setcavage testified in his deposition that he based his expert opinions upon a "standard of good industry practice and procedure," as well as "the minimum standard" set by the Unfair Claims Settlement Practices Act ("UCSPA"). (*Id*. at 9:17-20; 40:1-25). Mr. Setcavage reviewed the file materials "to see if the actions of American Fire [] conformed with the industry standard." (*Id*. at 13:17-22; *see also id.* at 29:13-16). In his report, Mr. Setcavage stated the Model Unfair Claims Settlement Practices Act, adopted by Kentucky, "only serves to set forth the *minimum* acceptable claims

standards for insurer conduct." (*Id.* at 31:4-25; *see also* Setcavage Report, 06/22/16, p. 5, Exhibit 1 to his deposition) (emphasis in original). In actuality, the Act itself does not mention the standards to be the **minimum** standards, but does state the following:

> The purpose of this Act is to set forth standards for the investigation and disposition of claims arising under policies or certificates of insurance issued to residents of [insert state]. It is not intended to cover claims involving workers' compensation, fidelity, suretyship or boiler and machinery insurance. **Nothing herein shall be construed to create or imply a private cause of action for violation of this Act.**
>
> **Drafting Note: A jurisdiction choosing to provide for a private cause of action should consider a different statutory scheme. This Act is inherently inconsistent with a private cause of action.**

(*See* Model UCSPA, § 1, p. 1, with a copy attached as **Exhibit 11**).

Again ignoring Kentucky law, Mr. Setcavage said he believed, "A delay in payment is the equivalency of a denial [of payment]." (*Id.* at 7:10-16). Although Mr. Setcavage admits American Fire never denied the existence of coverage, he did know that Philadelphia Indemnity denied the existence of the coverage and then went back rescinding the denial. (*Id.* at 7:17 to 8:2). Mr. Setcavage admits there was no technical breach of the insurance contract. (*Id.* at 117:2-11). He also admitted people can disagree on the value of a claim "as long as they're reasonable" (*Id.* at 72:25 – 73:6) and said that he himself has "increase[d] reserves on a claim when … additional proof comes in or the proof changes." (*Id.* 73:7-74:5).[3] Noticeably lacking from Mr.

---

[3] Plaintiff's expert is critical of American Fire's "reserving" of the claim. However, reserves are not even admissible evidence. In *Meador v. Indiana Ins. Co.*, 2007 W.L. 1098208 (W.D. Ky. 2007), the Court found that reserves were not relevant to the question of whether liability becomes reasonably clear in a bad faith case and precluded discovery on reserves. Kentucky statutory and regulatory law requires reserves information to be set. Such evidence has no relevance. As defined by the United States Supreme Court in *Maryland Casualty Co. v. U.S.*, 251 U.S. 342 (1920):

> The term "reserve" or "reserves" has a special meaning in the law of insurance. While its scope varies under different laws, in general it means a sum of money, variously computed or estimated, which, with accretions from interest, is set aside – "reserved" – as a fund with which to mature or liquidate, whether by payment or reinsurance with other companies, future unaccrued and contingent claims, and claims accrued, but contingent and indefinite as to amount or time of payment.

*Id.* at 350. "The purpose of reserves is to assure the accuracy of an insurer's financial statements and to avoid insurer insolvency … The amount of the reserve is supposed to reflect the adjuster's best estimate of the eventual cost of the

Setacage's report is any mention of Dr. Jenkinson's IME or subsequent change of position in his deposition. (*See id.* at 90:1-8; *see also* Setcavage Report, 06/22/16, Exhibit 1 to his deposition). In fact, Mr. Setcavage accused American Fire of going from an offer of $10,000 to $91,500 "without really any new information." (*Id.* at 97:1-11). In the end, Plaintiff's expert Setcavage said an insurance company "should pay exactly what is owed" but admits overpayment affects the premiums of other insurance pool members. (*Id.* 86:11-20).

American Fire moves the Court for dismissal of this case under Kentucky law because Plaintiff has no compensable damages and Plaintiff's claim was not denied at all, much less with intent or reckless disregard. With no damages, he has no claim. Furthermore, Plaintiff cannot prove a denial, much less outrageous conduct sufficient to award a bad faith verdict. As such, his allegations of punitive conduct and damages fail as a matter of law.

## IV.  STANDARD OF REVIEW

Upon moving for summary judgment, "the judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)(2). As such, the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996); *Oakes v. Allstate Ins. Co.*, No. 505CV174-R, 2008 WL 294569, at *2 (W.D. Ky. Jan. 31, 2008). A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate. *Monette*, 90 F.3d at 1177; *Oakes*, 2008 WL 294569 at *2.

---

claim to the company, including both the cost of indemnifying the insured and the cost of adjusting the claim." *See* Ashley, Stephen. *Bad faith Actions Liability & Damages*, § 10:31.  In short, it is an accounting function by which insurance companies are monitored so they do not go "belly up" when there is a catastrophe giving rise to claims.

Ultimately, there must be a determination "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). "Mere speculation will not suffice to defeat a motion for summary judgment and a genuine issue of material fact must exist to render summary judgment inappropriate. *Oakes*, 2008 WL 294569 at *2, citing, *Monette*, 90 F.3d at 1177. The test is whether the party bearing the burden of proof has presented a jury question as to each element of the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). Here, the undisputable material facts compel summary judgment in favor of American Fire. Importantly, the factual background section was drawn almost entirely from Plaintiff's pleadings and his deposition.

## V. <u>ARGUMENT</u>

The tort of "bad faith" has become either very misunderstood or very misused by plaintiffs. It is, in fact, an extraordinarily narrow tort. The Kentucky Supreme Court stated:

> The essence of the question as to whether the dispute is merely contractual or whether there are tortious elements justifying an award of punitive damages depends first on whether there is proof of bad faith and next whether the proof is sufficient for the jury to conclude that there was 'conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.'

*Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) (internal citations omitted). Here, we don't even get past the breach of contract element because there was none.

### A. **Plaintiff Suffered No Damages**

In Kentucky, a bad faith claim requires three elements of proof in order to prevail:

> (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such basis existed.

*Wittmer*, 864 S.W.2d at 890. Implicit in a claim for bad faith is that Plaintiff show actual, compensable damages resulting from the alleged bad faith. *Minter v. Liberty Mut. Fire Ins. Co.*, No. 3:11-CV-00249-S, 2014 WL 4914739, at \*1 (W.D. Ky. Sept. 30, 2014).

To establish a cause of action for a claim of bad faith, one cannot merely allege a technical violation of the UCSPA.  *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1990).  A plaintiff must prove she has been actually damaged by reason of the violation of the statute and without "actual damage" there can be no cause of action premised upon an allegation of bad faith under the UCSPA." *Exel, Inc. v. American Fire Fire Ins. Co.*, 2011 WL 1733553 \*2 (Ky. App., May 6, 2011) (citing *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452-54 (Ky. 1997)).

### 1. Plaintiff Admits Alleged Damages he is Suing for are unrelated to American Fire's Alleged Bad Faith.

Plaintiff's damages must be related to the alleged wrongdoing by American Fire. "[I]t is axiomatic in the law that proof of damages must be related to the wrong suffered." *PTS Corp. v. Buckman*, 561 S.E.2d 718, 722 (Va. 2002). "[A] condition precedent to bringing a statutory bad faith action is that the claimant was damaged by reason of the violation of the statute." *Rawe v. American Fire Fire Ins. Co.*, 462 F.2d 521, 532 (6th Cir. 2006) (citing *Glass*, 996 S.W.2d at 452); *Wittmer*, 864 S.W.2d at 890). By Plaintiff's own admission, his alleged damages are unrelated to the claims he pursues against American Fire.

In his deposition, Plaintiff expressed frustration because his life was put on hold and he couldn't work on his cars, go on vacation, or play with his grandkids because of his injury. *See* E. Foster, Dep., 06/14/16, 31:5-22, Ex. 1. These are items of damages against the tortfeasor, claims he has already settled, not against American Fire for bad faith. By Plaintiff's own description of his damages, he forecloses his bad faith claim against American Fire because the

damages he claims are not compensable or are completely unrelated to an alleged wrongdoing by American Fire, or both.

Even Plaintiff's Rule 26 Disclosures, served by his counsel, exemplify his confusion about damages related to American Fire even further. *See* Plaintiff's Initial Disclosures, 08/17/15, copy attached as **Exhibit 12**. The section regarding computation of damage commences by stating "Plaintiff's counsel is collecting documents relative to the calculation of **medical expenses and wage loss**." *Id.* at 4 (emphasis added). Apparently, Plaintiff intends to present damages stemming from medical expenses and wage loss attributable to American Fire. Yet, as indicated above Plaintiff has not sought medical treatment for his alleged emotional and mental pain and suffering. A claim for wage loss is inconceivable as Plaintiff did not mention anything about missing work due to any conduct by American Fire. Many of Plaintiff's alleged damages have no causal link attributable to American Fire.

## 2. Plaintiff cannot prove Actual Financial Damages as a Result of the Alleged Delay in Settlement and did not Sufficiently Plead Financial Damages.

Plaintiff did not plead any measurable financial damages and Plaintiff admitted in his deposition his "financial distress" did not amount to actual damages. If Plaintiff would have received the UIM policy limits from American Fire immediately after the car accident, he testified he "I wouldn't have had to worry about paying bills and taking care of my mortgage and paying health insurance to keep us going, and stuff like that, but that's all I was worried about, our health insurance and keeping our bills paid." *See* E. Foster, Dep., 06/14/16, 51:11-22, Ex. 1. Yet, he said he and his wife never missed a payment or had bill collectors coming after them. *Id.* at 26:15-21. Worrying about making payments, but not actually missing a payment, is not a compensable injury because Plaintiff would not have incurred any late fees or interest charges. *See* DAMAGES, Black's Law Dictionary (10th ed. 2014) ("Actual damages" is defined as "[a]n

amount awarded to a complainant to compensate for a proven injury or loss."); *compare Smith v. Liberty Mut. Ins. Co.*, No. 3:15-CV-00034-TBR, 2015 WL 7458641, at *3 (W.D. Ky. Nov. 23, 2015) (stating plaintiff "does not explain how receiving and repaying an interest-free loan has caused her damages.") (citing *Dickman v. C.I.R.*, 465 U.S. 330 (1984) (holding in a gift tax case that interest-free loans are a taxable benefit to the receiver of that loan).

Indeed, Plaintiff does not allege he incurred financial damages as a result of any alleged bad faith by American Fire. *See* Am. Comp. D.E. 26, 11/19/14, pp. 8-10. Plaintiff has not even had to pay his lawyers any money out of his pocket. *See* E. Foster, Dep., 06/14/16, 36:9-11, Ex. 1. Furthermore, when Plaintiff received the money from his insurance companies, he used it to pay off his mortgage in full, pay doctor bills, and he put some in savings. *Id*. at 27:9-17; and 36:12 through 37:4. Plaintiff has failed to provide evidence supporting that he suffered financial harm as a result of any act or omission by American Fire.

Furthermore, Plaintiff's Rule 26 Disclosures for this matter do not outline damages related to financial damages. *See* Plaintiff's Initial Disclosures, 08/17/15, Ex. 12. The only damages related to finances listed by Plaintiff are "financial distress." *Id*. at 5. Plaintiff does not list any measurable amount of financial damages. As Plaintiff did not even allege in his Amended Complaint that he suffered measurable financial damages as a result of American Fire's alleged bad faith, Plaintiff forecloses any argument that he suffered damages financially. Therefore, Plaintiff has not properly pled, and cannot prove, any financial damages resulting from the alleged delay in settlement. This is a judicial admission by omission that Plaintiff did not incur any compensable financial damages.

Plaintiff's omission from his pleadings of financial damages is a judicial admission proving the meritless nature of Plaintiff's claim. The Sixth Circuit Court of Appeals has

recognized that a party can make an admission by omission. *See Okros v. Angelo Iafrate Const. Co.*, 298 F. App'x 419, 430 (6th Cir. 2008). "Factual assertions in pleadings are judicial admissions conclusively binding on the party that made them." *Morales v. Department of the Army*, 947 F.2d 766, 769 (5th Cir. 1991) (quoting *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105 (5th Cir. 1987)). As recognized in the Robert Lawson's treatise, *The Kentucky Evidence Law Handbook*, § 8.15[4] at p. 590 (4th Ed. 2003), "[t]he pleadings process is clearly the most fertile field for judicial admissions."

Here, failure to adequately plead financial damages is an admission by omission which is further supported by Plaintiff's admission of lack of financial damages in his deposition. Plaintiff's claim for financial damages lacks merit.

### 3. Plaintiff's Alleged Emotional Distress Damages are not Recoverable Under Kentucky Law.

Plaintiff is not allowed to collect damages for alleged emotional or mental distress as claimed in his Amended Complaint. The Kentucky Supreme Court dealt with the issue of emotional distress damages in the case of *Motorists Mutual Insurance Co. v. Glass*, 996 S.W.2d 437 (Ky. 1997), where the Kentucky Supreme Court stated:

> While damages for anxiety and mental anguish are recoverable in an action for statutory bad faith, entitlement to such damages requires either direct or circumstantial evidence from which the jury could infer that anxiety or mental anguish in fact occurred.  The proof must be clear and satisfactory; and evidence based on conjecture will not support a recovery for such damages.

*Id.* at 454 (internal citations omitted). As there is no "clear and satisfactory" evidence of damage in this case, Plaintiff's emotional distress claim fails and American Fire is entitled to summary judgment on this claim as a matter of law.

The United States District Court for the Western District of Kentucky addressed nearly identical claims in the cases of *Minter v. Liberty Mut. Fire Ins. Co.*, No. 3:11-CV-00249-S, 2014

WL 4914739 (W.D. Ky. Sept. 30, 2014) and *Smith v. Liberty Mut. Ins. Co.*, No. 3:15-CV-00034-TBR, 2015 WL 7458641 (W.D. Ky. Nov. 23, 2015). The plaintiff in *Minter* received a $100,000.00 settlement check from the tortfeasor's insurance company and a $100,000.00 check from her own insurance company for underinsured motorists coverage. *Minter*, 2014 WL 4914739, at *1-2. The *Minter* plaintiff acknowledged she never went to any counselors, psychiatrists or psychologists for her mental state.[4] The plaintiff brought claims for emotional damages, but this Court held she did not show enough emotional damages to survive summary judgment. *Id*. at *5. This Court cited *Glass*, 996 S.W.2d at 454, and held the plaintiff could not prove her non-specific emotional distress and did not present a genuine issue of material fact as to actual, compensable damages." *Id*. at *5-6.

Similarly, the plaintiff in *Smith* had not presented any evidence of emotional damages that rise to the level required by *Glass*. The plaintiff in *Smith* claimed she suffered emotional damages and argued that "incurring debt, especially debt brought on through no fault of one's own, is distressing." *Smith*, 2015 WL 7458641, at *4. The *Smith* court held the plaintiff did not suffer any damages attributable to the insurer. *Id*.[5]

Plaintiff, like the plaintiffs in *Minter* and *Smith* has not presented sufficient proof of damages. He admitted his wife dealt primarily with the insurance company and that he did not seek any treatment from a psychologist or a psychiatrist or a counselor for a mental problem and he has never been treated for depression. *See* E. Foster, Dep., 06/14/16, 28:8-12. Furthermore,

---

[4] *Minter v. Liberty Mut. Fire Ins.*, Defendant's Memorandum in Support of its Motion for Summary Judgment, 2013 WL 10760090 (W.D.Ky.)

[5] Recently, the Kentucky Supreme Court removed the "physical impact" requirement for maintaining a claim of emotional distress, but it also established a strict standard of proof for this type of claim. *Osborne v. Keeney*, 399 S.W. 3d 1 (Ky. 2012). Judge Simpson, in *Minter*, incorrectly stated *Osborne* does not apply to bad faith cases. *Minter*, 2014 WL 4914739, at *5, n. 1. Nevertheless, *Glass*, 996 S.W.2d 437, controls and the same result is reached under either standard.

the only physical damages Plaintiff complains of stem from the accident and are unrelated to the alleged conduct of American Fire.

Mere conclusory allegations are not sufficient to withstand a motion for summary judgment. *Minter*, 2014 WL 4914739, at *6 (citing *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir.1990)). As a consequence, there is no proof on this issue, nor has Plaintiff indicated there will be any proof. As the Western District previously granted summary judgment in *Minter* and *Smith*, this Court should do the same in this case as Plaintiff does not have compensable emotional damages.

Because Plaintiff has suffered no compensable damages, American Fire is entitled to Summary Judgment as a matter of law.

### B. Because Plaintiff has Sustained No Compensable Damages his Consumer Protection Act Claim Fails as Well.

Plaintiff's claim under the Kentucky Consumer Protection Act ("KCPA") also fails because he has not suffered any compensable damages. A plaintiff bringing claims under the KCPA must demonstrate some compensable injury under KRS 367.220.[6] *Minter*, 2014 WL 4914739, at *7. Moreover, an alleged denial of a plaintiff's intangible "right to be dealt with fairly, truthfully, and without being misled or deceived" is not capable of redress nor the "ascertainable loss that the KCPA recognizes." *Id.* (citing *M.T. v. Saum*, 7 F.Supp.3d 701, 705 (W.D.Ky. Mar. 12, 2014)). Plaintiff never communicated with American Fire, therefore he couldn't have been told anything false, unfair, or misleading.

---

[6] KRS 367.220 expressly provides in pertinent part:

    (1) Any person who purchases or leases goods or services **primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of** the use of employment by another person of a method, act or practice declared unlawful by KRS 367.170, may bring an action under the Rules of Civil Procedure in the Circuit Court in which the seller or lessor resides or has his principal place of business or is doing business …. (emphasis added).

Under the statute and controlling law, Plaintiff did not suffer any ascertainable loss of money or property as a result of anything American Fire did, or did not do. *See Minter*, 2014 WL 4914739, at *7 (stating "[t]his Court has twice construed the phrase 'ascertainable loss of money or property' under the KCPA and found that it means 'evidence from which a factfinder could find or infer that the plaintiff suffered an actual loss' or that she 'suffer[ed] harm." (citations omitted)). As previously indicated, Plaintiff has not pled financial damages and cannot prove any emotional damages. Therefore, because he has no compensable damages, he has failed to meet his burden imposed by KRS 367.220 and the Court should dismiss his consumer protection claim as a matter of law.

Attorney fees are not an ascertainable loss of property or money required by the Consumer Protection Act.  Attorney fees do not amount to the "ascertainable loss" anticipated and required by KRS §367.220.  Although no Kentucky state court has yet ruled on the issue in a published opinion, recently this Court directly confronted and rejected the notion that attorneys' fees are the type of "ascertainable loss" contemplated by that statute:

> Plaintiffs make a last ditch effort to spin an "ascertainable loss" out of the attorneys fees they amassed during this litigation. They claim New Jersey's Consumer Fraud Act permits attorneys fees and costs incurred during the prosecution of a claim to form the basis of an ascertainable loss…. Accepting such a theory would allow consumers in New Jersey to bring lawsuits under the state's Consumer Fraud Act without having ever been harmed, financially or otherwise.
>
> Besides being a nonsensical interpretation of the law, Plaintiffs have overlooked the express repudiation of their theory by the New Jersey Supreme Court in *Weinberg v. Sprint Corp.*, 173 N.J. 233, 801 A.2d 281 (N.J.2002). There, the court concluded that attorneys fees under the New Jersey's Consumer Fraud Act are available only where a plaintiff advances beyond a motion for summary judgment and presents an ascertainable-loss argument to a finder of fact. *Id.* at 292–93. As Plaintiffs cannot muster an ascertainable loss at the motion-to-dismiss stage, attorneys fees may not form the cornerstone of this claim.[FN3]

> FN3. **Plaintiffs do not argue attorneys fees can bridge the gap of ascertainable losses under Kentucky's consumer fraud laws. They are correct to do so; this Court has previously rejected such a claim.** *Yates v. Bankers Life & Cas. Ins. Co.,* **720 F.Supp.2d 809, 816 (W.D.Ky.2010)**.

*Holmes v. Countrywide Financial Corp.*, 2012 WL 2873892 *14 (W.D.Ky. July 12, 2012) (emphasis added). *See also C.A.R. Tow, Inc. v. Corwin*, 76 Or.App. 192, 708 P.2d 644 (Or.App.,1985) (attorney fees are not an "ascertainable loss" within the meaning of Oregon Consumer Protection Act, because the legislature provided an independent basis for the recovery of attorney fees); *Cole v. Laughrey Funeral Home*, 869 A.2d 457 (N.J. App. 2005) (holding that damages for emotional distress are not recoverable as ascertainable losses under the CFA); and *Weinsteiger v. Navy Fed. Credit Union*, No. HHDCV106017785S, 2011 WL 7049489, at *3 (Conn. Super. Ct. Dec. 27, 2011) ("it would result in the unsound conclusion that the plaintiff can gain entitlement to attorneys fees based solely on the fact that she incurred expenses in seeing an attorney. Surely the legislature did not intend this irrational result.").

Plaintiff does not pay his attorney hourly fees. E. Foster Dep. 06/14/16, 36:5-11, Ex. 1 Rather, he pays him based on a contingency basis. *Id*. Thus, Plaintiff has presented <u>no</u> evidence, in his deposition or otherwise, of an "ascertainable loss of money or property" resulting from American Fire's alleged conduct. There is a complete absence of proof on the material issue of "ascertainable loss" required for the standing to recover under KRS §367.220.  Therefore, his Kentucky Consumer Protection Act claim must fail.

### C. Plaintiff cannot Sustain a Bad Faith Claim and cannot Collect Punitive Damages
#### 1. Plaintiff's Claim was Never Denied

The bar for a bad faith claim in Kentucky is high:

(1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for **denying the claim**; and (3) it must be shown that the insurer either knew there was no reasonable

basis for **denying the claim** or acted with reckless disregard for whether such basis existed.

*Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) (emphasis added). Therefore, inherent in the requirements for bad faith is denial of the claim. "In applying [the *Wittmer*] standard… it must be kept in mind that mere delay in payment does not amount to outrageous conduct absent some affirmative act of harassment or deception." *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997), as modified (Feb. 18, 1999). Both parties agree Plaintiff's claim was never denied – therefore, Plaintiff has no valid bad faith claim under Kentucky law.

### 2.  Plaintiff has not Alleged Sufficient Outrageous Conduct

In *Wittmer*, the Kentucky Supreme Court "gathered all of the bad faith liability theories under one roof and established a test applicable to all bad faith actions, whether brought by a first-party claimant or a third-party claimant, and whether premised upon common law theory or a statutory violation." *Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000). "Before the cause of action for bad faith exists in the first place, there must be evidence sufficient to warrant punitive damages." *United Servs. Auto. Ass'n v. Bult*, 183 S.W.3d 181, 186 (Ky. App. 2003). "[I]n order to justify an award of punitive damages, there must be proof of bad faith sufficient for the jury to conclude that there was conduct that was outrageous, because of the defendant's evil motive, or his reckless indifference to the rights of others." *Phelps v. State Farm Mut. Auto. Ins. Co.*, 736 F.3d 697, 703 (6th Cir. 2012) (calling this "a high threshold standard"). "[T]here can be no private cause of action for a mere 'technical violation' of the UCSPA." Motorists Mut. Ins. Co. v. Glass, 996 S.W.2d 437, 452 (Ky. 1997).

Plaintiff alleges American Fire's conduct which amounts to bad faith was "they just took so long to do what they was supposed to do" (*See* E. Foster, Dep., 06/14/16, 48:11-15, Ex. 1), and the people at American Fire "never did cooperate." (*Id.* at 21:7-12 and 29:19 through 30:3).

These allegations, even if viewed in a light favorable to Plaintiff, fall far short of the high standard for a bad faith claim. Kentucky courts have consistently stressed that the "evidentiary threshold is high indeed" to show bad faith:

> Evidence must demonstrate that an insurer has engaged in outrageous conduct toward its insured. Furthermore, the conduct must be driven by evil motives or by an indifference to its insureds' rights. Absent such evidence of egregious behavior, the tort claim predicated on bad faith may not proceed to a jury. Evidence of mere negligence or failure to pay a claim in timely fashion will not suffice to support a claim for bad faith. Inadvertence, sloppiness, or tardiness will not suffice; instead, the element of malice or flagrant malfeasance must be shown.

*United Servs. Auto. Ass'n v. Bult*, 183 S.W.3d 181, 186 (Ky. Ct. App. 2003). Any alleged conduct by American Fire does not meet this high threshold as Plaintiff merely alleges it did not pay his claim in a timely fashion.

In *Smith v. Liberty Mut. Ins. Co.*, No. 3:15-CV-00034-TBR, 2015 WL 7458641, at *2 (W.D. Ky. Nov. 23, 2015), the court granted summary judgment for UIM insurer because the plaintiff failed to demonstrate the insurer acted with evil motive or malice sufficient enough to meet the high threshold for Kentucky bad faith claims. *Id*. at *3. In *Smith*, the plaintiff's claim was never denied, but the plaintiff alleged her insurer "acted in bad faith in being slow to investigate and settle [her] claim and attempting to "low ball" her. *Id*. at *2. The Court found the plaintiff's arguments fell short of the high threshold in Kentucky because a delay in payment, without more, does not justify submitting a bad faith claim to a jury. *Id*. at *2-3 (citing *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993); *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997); and *Bult*, 183 S.W.3d at 186).

Similarly, Plaintiff is merely alleging American Fire took too long to pay his claim. (*See* E. Foster, Dep., 06/14/16, 48:11-15; 21:7-12; and 29:19 through 30:3, Ex. 1). Plaintiff cannot recall his claim ever being denied. (*Id*. at 22:9 through 23:2). But Plaintiff did acknowledge an

insurance company should not just pay what people ask (*id.* at 48:21-23) and it should investigate a claim. (*Id.* at 47:23-25). As in *Smith*, American Fire's alleged conduct is not outrageous conduct sufficient to sustain a claim for bad faith. Absent such evidence of egregious behavior, Plaintiff's tort claim predicated on bad faith may not proceed to a jury and summary judgment is appropriate in favor of American Fire.

### 3.   Plaintiff's Alleged Damages do not Support a Punitive Damage Award

Plaintiff cannot collect punitive damages when the damages he alleges are either non-existent or unrelated to the alleged improper conduct of American Fire.   The United States Supreme Court addressed this issue in *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003).   In *Campbell*, the Court held that an excessive award of punitive damages violated due process. *Id.* at 429. In reaching its result, the Court explained the necessity of causal connection of harm with punitive conduct. *Id.* at 409-10. The insureds had brought an action against automobile liability insurer to recover bad faith failure to settle within the policy limits, fraud, and intentional infliction of emotional distress. *Id.* at 414. The lower courts had awarded $145 million in punitive damages, where full compensatory damages were $1 million. *Id.* at 412. The Supreme Court reversed the Utah Supreme Court for "award[ing] punitive damages to punish and deter conduct that bore no relation to the Campbell's harm" and indicated courts must not award punitive damages that are unreasonable or disproportionate to the amount of harm the plaintiff suffered. *Id.* at 426. In *Campbell*, the harm arose from an economic transaction, not from physical injuries, and State Farm paid the excess verdict before the complaint was filed, so the plaintiffs only suffered minor economic injuries during the time State Farm refused to resolve the claim against them. *Id.* at 426.

Indeed, the Court observed "[a] defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business" *Id*. at 423. Because Plaintiff has no compensable harm, he cannot recover any type of damages.

The Supreme Court of Kentucky in *Wittmer v. Jones*, 864 S.W.2d 885 (Ky. 1993), explained what distinguishes the tort of bad faith from a mere breach of contract action:

> The essence of the question as to whether the dispute is merely contractual or whether there are tortious elements justifying an award of punitive damages depends first on whether there is proof of bad faith and next whether the proof is sufficient for the jury to conclude that there was 'conduct that is outrageous, because of the defendant's evil motive or his reckless and indifference to the rights of others.'

*Id*. at 890 (internal citations omitted). Due to the fact that the tort of bad faith is akin to an intentional one, before the cause of action exists in the first place, there must be sufficient evidence "to warrant submitting the right to award punitive damages to the jury." *Id*. As stated in *Rawe v. American Fire Fire Ins. Co.*, 462 F.2d 521, 532 (6th Cir. 2006), "[r]egardless which type of damages is sought, Plaintiff cannot bring a private cause of action 'for a mere technical violation' of the [K]UCSPA,' but rather 'a condition precedent to bringing a statutory bad faith action is that the claimant was damaged by reason of the violation of the statute." (citing *Glass*, 996 S.W.2d at 452 (quoting *Wittmer*, 864 S.W.2d at 890)).

As Plaintiff was not damaged, he has no claim for punitive damages. Additionally, Plaintiff has failed to plead "sufficient evidence of intentional misconduct or reckless disregard of the rights of an insured claimant to warrant submitting the right to award punitive damages to the jury" and therefore, his punitive damage claim fails.

## VI.   <u>Conclusion</u>

Because Plaintiff has no compensable damages, his claim was never denied, and he cannot present sufficient evidence of outrageous conduct, he has no viable bad faith claim under

24

Kentucky law. Summary judgment in favor of American Fire is appropriate and Plaintiff's case must be dismissed.

Respectfully submitted,

**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**

/s/ Donald L. Miller, II
Donald L. Miller, II, Esq.
Paul J. Painter, Esq.
9300 Shelbyville Road, Suite 400
Louisville, KY  40222
Telephone: 502.423.6390
Facsimile: 502.423.6391
dmiller@qpwblaw.com

-and-

Heather M. McCollum, Esq.
2452 Sir Barton Way, Suite 300
Lexington, KY  40509
Telephone: 859.226.0057
Facsimile: 859.226.0059
hmccollum@qpwblaw.com
*Counsel for Defendant,*
*American Fire and Casualty Company*

## CERTIFICATE OF SERVICE

I certify that on September 12, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Donald L. Miller, II
*Counsel for Defendant,*
*American Fire and Casualty Company*

25