**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTINE MONAGHAN and | : | No. 3:12cv1285 |
| GEORGE MONAGHAN, her husband, | : | |
| Plaintiffs | : | (Judge Munley) |
| | : | |
| v. | : | |
| | : | |
| THE TRAVELERS PROPERTY | : | |
| CASUALTY COMPANY OF | : | |
| AMERICA and THE TRAVELERS | : | |
| HOME AND MARINE | : | |
| INSURANCE COMPANY, | : | |
| Defendants | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

Before the court for disposition is the motion in limine to preclude testimony of plaintiffs' proposed expert witness Stuart Setcavage, which was filed by the Defendants, The Travelers Property Casualty Company of America and The Travelers Home and Marine Insurance Company (hereinafter "defendants"). The matter has been fully briefed and is ripe for disposition.

**Background**

Plaintiff Christine Monaghan (hereinafter "plaintiff")[1] was involved in a motor vehicle accident on April 10, 2008.  At the time of the accident, plaintiff had an automobile insurance policy (hereinafter "the policy") with the defendants.  The policy provided medical benefits with limits of $100,000 and wage loss benefits of $15,000.[2]

Due to the accident, plaintiff suffered some physical injury, and she made a claim for benefits under the policy.  Initially, the defendants paid medical benefits to the plaintiff.  To determine whether the accident caused plaintiff's accident, however, defendants had her undergo three independent medical examinations (hereinafter "IMEs").

The first and second IMEs indicated that the accident had caused the injuries.  The doctor who performed the third IME concluded that plaintiff had reached maximum recovery from the injuries caused by the accident.  Thus, the defendants notified plaintiff that it would stop providing medical benefits.

_____

[1]Plaintiff Christine Monaghan's husband is also named as a plaintiff in the instant case.  It appears, however, that no claims have been asserted on his behalf.  Therefore, we shall refer to Christine Monaghan as "plaintiff".

[2]The automobile insurance policy number is 982662495 101 1.  (Doc. 30, Mot. for Summ. J. ¶ 14).

2

Based upon these facts, and defendant's decision to stop providing benefits, the plaintiff filed the instant lawsuit. The complaint originally contained the following three causes of action: Count I, Breach of Contract; Count II, Bad Faith pursuant to 42 P.S. § 8371; and Count III, Unfair Trade Practice and Consumer Protection Law, 73 P.S. § 201-2, *et seq.*

Plaintiff filed suit in the Luzerne County, Pennsylvania Court of Common Pleas on June 6, 2012. (Doc. 1-3, Complaint (hereinafter "Compl.")). The defendants removed the case to this court on July 5, 2012. (Doc. 1, Notice of Removal). After a period of discovery, the defendants filed a motion for summary judgment by which they sought they dismissal of all of plaintiff's claims against them. (Doc. 30, Mot. for Summ. J.). In response, plaintiff withdrew the breach of contract claim and the Unfair Trade Practice and Consumer Protection Law claim. We denied the defendants' summary judgment with regard to the bad faith claim and scheduled a pretrial conference.

In advance of the pretrial conference, the defendants filed the instant motion in limine to preclude testimony of plaintiff's insurance expert witness, Stuart Setcavage. The parties have briefed their respective positions, brining the case to its present posture.

3

**Jurisdiction**

This Court has jurisdiction pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332. The plaintiffs are citizens of Pennsylvania, and the defendant is a Connecticut corporation with a principal place of business in Connecticut . (Doc. 30, Mot. for Summ. Judg. ¶¶ 4, 6). Because we are sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. <u>Chamberlain v. Giampapa</u>, 210 F.3d 154, 158 (3d Cir. 2000) (citing <u>Erie R.R. v. Tompkins</u>, 304 U.S. 64, 78 (1938)).

**Standard of Review for Expert Testimony**

Defendants have filed a motion in limine to preclude plaintiff's proposed expert witness Stuart Setcavage from testifying on the issue of insurance bad faith.

Federal Rule of Evidence 702 provides that "a witness qualified as an expert by knowledge, skill, experience, training, or education" may provide opinion testimony "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. Courts have described the district court's task in determining whether to admit expert testimony as a

4

Case: 5:13-cv-00426-GFVT-REW Doc #: 103-4 5 Filed: 10/04/16 Page: 5 of 11 Page ID#:
Case: 3:12-cv-01285-JMM Document 55 Filed: 07/16/14 Page 5 of 11
2845

"gatekeeping" function.  The trial judge has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  <u>Daubert v. Merrell Dow Pharm.</u>, 509 U.S. 579, 597 (1993). Thus, "[t]he objective of that requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in a particular field."  <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 152 (1999).

Analysis under Rule 702 includes three factors:  " '(1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge[, i.e., reliability]; and (3) the expert's testimony must assist the trier of fact[, i.e., fit].' "  <u>United States v. Schiff</u>, 602 F.3d 152, 172 (3d Cir. 2010) (quoting <u>Pineda v. Ford Motor Co.</u>, 520 F.3d 237, 244 (3d Cir. 2008)).

First, in deciding whether an expert is qualified, courts are required to assess whether the expert has specialized knowledge in his or her testimony, which may be based in practical experience as well as

academic training and credentials.  See Elcock v. Kmart Corp., 733 F.3d 734, 741 (3d Cir. 2000).  The specialized knowledge requirement has been interpreted liberally in the substantive as well as the formal qualification of experts; "'at a minimum, a proffered expert witness . . . must possess skill or knowledge greater than the average layman . . ..'" Id. (quoting Waldorf v. Shuta, 142 F.3d 601, 625 (3d Cir.1998)).

Second, courts are charged with assessing the techniques and methodologies employed by the expert when determining the reliability of his proposed opinion. To qualify as reliable under Rule 407, the "expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'"  In re Paoli R.R. Yard PCB Litig. 35 F.3d 717, 742 (3d Cir. 1994), cert. denied, 513 U.S. 1190 (1995) ("Paoli II"), (quoting Daubert, 509 U.S. at 590).  Essentially, "an expert opinion must be based on reliable methodology and must reliably flow from that methodology and the facts at issue—but it need not be so persuasive as to meet a party's burden of proof or even necessarily its burden of production." Heller v. Shaw Indus., Inc., 167 F.3d 146, 152 (3d Cir. 1999).  Furthermore, district courts are not tasked with determining the correctness of a proposed witness' opinion.  Paoli II, 35 F.3d at 744

6

("The grounds for the expert's opinion merely have to be good, they do not

have to be perfect.").  As the Third Circuit Court of Appeals has noted:

> A judge frequently should find an expert's
> methodology helpful even when the judge thinks
> that the expert's technique has flaws sufficient to
> render the conclusions inaccurate. He or she will
> often still believe that hearing the expert's testimony
> and assessing its flaws was an important part of
> assessing what conclusion was correct and may
> certainly still believe that a jury attempting to reach
> an accurate result should consider the evidence.

Id. at 744–45.

Third, Rule 702 requires that courts make a determination as to the

"fit" of the expert testimony. Courts ask "'whether [the] expert testimony

proffered . . .  is sufficiently tied to the facts of the case that it will aid the

jury in resolving a factual dispute'" when assessing the fit of expert

testimony. Daubert, 509 U.S. at 591 (quoting United States v. Downing,

753 F.2d 1224, 1242 (3d Cir. 1985)).  "Admissibility thus depends in part

upon 'the proffered connection between the scientific research or test

result to be presented and particular disputed factual issues in the case.' "

Oddi v. Ford Motor Co., 234 F.3d 136, 145 (3d Cir. 2000) (quoting Paoli II,

35 F.3d at 743).

While this court may admit a somewhat broader range of scientific

testimony than was allowed pre-Daubert, "nothing in either Daubert or the

Federal Rules of Evidence requires a district court to admit opinion
evidence which is connected to existing data only by the *ipse dixit*[3] of the
expert.  A court may conclude that there is simply too great an analytical
gap between the data and the opinion proffered."  <u>General Electric v.
Joiner</u>, 522 U.S. 136, 146 (1997).  But ultimately, the trial court is granted
leeway when it determines how to evaluate expert testimony before trial,
just as it enjoys in an ultimate ruling on the case.  <u>Id.</u> at 143 (appellate
courts are to apply "abuse of discretion" standard when reviewing district
court's reliability determination).

**Discussion**

In the instant case, the defendants challenge Setcavage on the
following grounds: 1) the finder of fact does not need the assistance of
expert testimony to comprehend the plaintiffs' bad faith allegations; 2)
some of Setcavage's opinions go to the ultimate issues in the case and he
thus usurps both the trier of fact and the trier of law; and 3) the remainder
of Setcavage's opinions are his *ipse dixit* and not based on any recognized
insurance industry standards.   We will address these issues *in seriatim*.

**1) Would the factfinder benefit from the assistance of expert**

[3]*Ipse dixit* is defined as: "Something asserted but not proved," from
Latin, "he himself said it." BLACK'S LAW DICTIONARY (8th ed. 2004).

8

**testimony?**

First, the defendants claim that plaintiff's bad faith claim is simple,
and the factfinder does not need expert testimony to understand it. After a
careful review, we find that a factfinder would benefit from the assistance
of expert testimony.

Defendant cites to the case a from the Western District of
Pennsylvania case, <u>Schifino v. GEICO General Insurance Company</u>, No.
2:11cv1094, 2013 WL 2404115 (W.D. Pa. 2013). In <u>Schifino</u>, the trial
judge exercised its discretion to preclude both the plaintiff's and
defendant's expert witnesses.

The court found that "the concept of bad faith is within the ken of the
average layperson such that expert testimony is not necessary in this
matter. A reasonable juror certainly possesses the requisite knowledge to
assess the bad faith allegation, which is equally neither particularly
complex nor scientific." <u>Id.</u> at *2. <u>Schifino</u>, however, is not particularly
convincing in the instant case. The issue of whether an expert is
warranted in a bad faith action is very fact specific to each case and
dependent on the complexity of the issues. Not all bad faith claims are
equally complex. This case, however, appears to be one which is

Case: 5:13-cv-00426-GEK-REM   Document #255   Filed: 07/04/14   Page: 10 of 11 - Page
Case 5:12-cv-01265-JMM   Document 55   Filed 09/26/14   Page 10 of 11
ID#: 2850

somewhat complex and in which the factfinder may find an expert useful.

The allegations of bad faith involve medical professionals employed by

defendant and their use of independent medical examiners' opinions.  It

will be important for the factfinder to understand the obligations of first

party medical benefit claims handlers in such situations.  Moreover,

plaintiff's bad faith allegations include not only the defendants' legal

obligations under the policy, but also under Pennsylvania law.  Accordingly,

we reject the defendant's first argument.  See Bonenberger v. Nationwide

Mut. Ins. Co., 791 A.2d 378, 382 (Pa. Super. Ct. 2002) (indicating that

expert opinion on bad faith claims is not always necessary but is left to the

discretion of the trial court).

## 2) Opinions as to the ultimate issues

Defendant argues that the expert testimony is inappropriate because

it goes to the ultimate issues in the case.  Testimony as to the ultimate

issue in bad faith action may in fact be inappropriate.  If Setcavage

provides such testimony, defendants may object to it at trial.

## 3) Opinions not based on any insurance standards

The final argument that the defendants raise is that Setcavage's

opinion is not based on any insurance standards.  We find this argument

10

Case: 5:13-cv-00426-CFYE-REM   Document: 55   Filed: 09/04/14   Page: 11 of 11   - Page
Case 3:12-cv-01285-JMM   Document 55   Filed 07/16/14   Page 11 of 11
ID#: 2851

unconvincing.  For approximately twenty-four years, Setcavage was

employed by the largest auto insurance company in the world, where he

handled and supervised the handling of automobile insurance claims.

(Doc. 49-1, Setcavage Rep. at 3).  He also trained claim representatives

and lawyers with regard to regulatory and industry standards, policy

language and best practices.  (Id.)  It is with this background and expertise

that he addressed plaintiff's claim.  We cannot find, therefore, that his

opinions are not based on insurance standards.  Moreover, the defendants

will have the opportunity to attack the basis of Setcavage's opinion through

cross-examination and argument at trial.

**Conclusion**

For the foregoing reasons, we will deny the defendants' motion in

limine to preclude the testimony of plaintiff's proposed expert witness,

Stuart Setcavage.  The issues are sufficiently complex to justify the calling

of an expert witness.  The expert will not be allowed to testify improperly,

however, to such things as the ultimate issue.  The defendants may make

objection to such testimony at trial.  An appropriate order follows.

**Date: July 16, 2014**                    **s/ James M. Munley**

**JUDGE JAMES M. MUNLEY**
**United States District Court**

11