*ELECTRONICALLY FILED*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

| | | |
|---|---|---|
| **ERNEST FOSTER** | ) | **PLAINTIFF** |
| | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:13-CV-00426-** |
| | ) | **GFTV** |
| | ) | |
| **AMERICAN FIRE AND** | ) | **DEFENDANT** |
| **CASUALTY COMPANY** | ) | |
| | ) | |

---

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

---

Defendant, American Fire and Casualty Company ("American Fire"), respectfully submits this Reply in Support of its Motion for Summary Judgment. Nearly the entirety of Plaintiff's Response to American Fire's Motion for Summary Judgment is devoted to "delay," "reserves," and "reasonableness" – none of which are even material inquiries in the circumstances present here. Plaintiff fails to present any evidence of damages related to any alleged bad faith conduct by American Fire.

I.  **INTRODUCTION**

Plaintiff did not even <u>sue</u> for UIM benefits until November 19, 2013, five years after the accident. (*See* Initial Complaint, D.E. 1-1). No bad faith claims were even asserted then. Because claim splitting is precluded he would have been required to assert pre-suit bad faith conduct when suit was filed. *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521 (6th Cir. 2006). Another year later, after litigation governed by the Federal Rules of Civil Procedure and this Court's orders, Plaintiff decided to assert bad faith claims which were immediately bifurcated and stayed

pursuant to this Court's order. Only after Plaintiff accepted a UIM settlement, smaller than he said he would never accept, could the bad faith claims be exposed as meritless. They must now be dismissed.

## II.   PLAINTIFF'S RESPONSE SUPPORTS SUMMARY JUDGMENT IN FAVOR OF AMERICAN FIRE.

### A.   PLAINTIFF URGES AN INCORRECT STANDARD

Plaintiff states: "The reasonableness of American Fire's position is a question for the jury, and there are many facts from which jurors could infer that American Fire acted unreasonably…." (Response, D.E. 195, p. 13). The "reasonableness" of claims handling is not even a material inquiry. *Id*. Plaintiff's own proffered expert acknowledges there was not <u>even a breach of the insurance contract</u>. (*See* S. Setcavage, Dep., D.E. 188-9, 07/26/16, 7:17 to 8:2). Moreover, there is no such thing as "negligent" breach of contract or Bad Faith in Kentucky. Plaintiff's comment concerning *Hollaway v. Direct General Ins. Co. of Miss.*, 2014-SC-000758-DG, 2016 WL 5245694 (Ky. Sept. 22, 2016), misses the point. <u>Fault</u> was not contested here, but the existence and causal connection, both necessary for liability, were. *Helen v. Hays*, 673 S.W.2d 713, 720 (Ky. 1984).

The reasonableness standard urged by Plaintiff, although discussed in *Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368 (Ky. 2000), is not Kentucky law. *See Phelps v. State Farm Mut. Auto. Ins. Co.*, 736 F.3d 697, 705 (6th Cir. 2012) (internal citations omitted) ("We acknowledge that the Kentucky cases still recognize *Wittmer*'s punitive-damages standard despite the Kentucky Supreme Court's later pronouncement that "the appropriate inquiry is whether ... the insurer acted unreasonably.") This notion is further supported by the recent decision in *Hollaway v. Direct General Ins. Co. of Miss., Inc.*, 2014-SC-000758-DG, 2016 WL 5245694 (Ky. Sept. 22, 2016). *Hollaway* reaffirms the strict standard for bad faith in Kentucky.

2

**B. RESERVES ARE IRRELEVANT, BY PLAINTIFF'S OWN ARGUMENT**

Second, Plaintiff demonstrates why reserve information is not useful in a bad faith case when he states an adjuster "noted that the claim had a value in excess of …$100,000." (Response, D.E. 195, p. 4). The entry Plaintiff refers to was made during the process of setting an initial <u>reserve</u>, required by law, based <u>only</u> on what Plaintiff's wife, Ms. Foster, had represented to American Fire. The reserve was adjusted downward on review of the records, medical proof, and verification of Plaintiff's assertions.

Plaintiff repeatedly mentions American Fire initially <u>valued</u> his claim at over $100,000 in June 2010. These statements are misdirected as a reserve, by definition, is starkly contrasted from the settlement value of a case. Furthermore, as American Fire explained in its previously filed memorandum, its initial reserve was upon incomplete information supplied by Ms. Foster. That is not disputed. Ms. Foster presented redacted tax returns misstating her husband's income. Ms. Foster represented Plaintiff would most likely need a total knee replacement. To date, Plaintiff has not received a knee replacement. Ms. Foster also represented Plaintiff was starting injections soon. To date, Plaintiff has not received injections.

**C. PLAINTIFF CANNOT PROVE DAMAGES RESULTING FROM AMERICAN FIRE'S ALLEGED BAD FAITH**

Third, Plaintiff doesn't even contest that the "anxiety and mental anguish" alleged were caused by injuries from the <u>accident</u>, the claims for which have been settled. Plaintiff cites *Adkins v. Shelter Mut. Ins. Co.*, No. CIV.A. 5:12-173-KKC, 2015 WL 1393583 (E.D. Ky. Mar. 25, 2015), to show support that he has sustained a sufficient amount of damages to survive summary judgment. However, *Adkins* is materially different as the plaintiff in that case had dropped common law bad faith claims and added claims for "fraud in the inducement, fraud, negligence/gross negligence, negligent misrepresentation, negligent training and supervision, and

intentional misrepresentation."[1] *Id*. at *2. The primary dispute in *Adkins* was whether the insurer obtained a settlement agreement from the plaintiff's mother in an intentionally or recklessly unreasonable manner. The plaintiff in *Adkins* had presented evidence of a company-wide trend regarding failure of its adjusters to obtain court approval for minor settlements. Noting that the court questioned plaintiff's evidence on damages, it ultimately held plaintiff presented evidence that the insurer's actions in "causing her to believe that she was barred from bringing a personal injury claim caused her emotional distress." *Id*. at *6. That is fraud – not bad faith.

Unlike the plaintiff in *Adkins*, Mr. Foster testified his damages were related to the underlying motor vehicle accident, not American Fire's conduct. *See* Response, D.E. 195, pp. 18-19 (stating "it changed my whole life when I lost my income and my business, when you don't have money, you don't do things, you change your whole lifestyle."); *see also* E. Foster, Dep., 06/14/16, D.E. 188-2, at 31:11-22 (when asked why his life was put on hold, Plaintiff said "I can't work on my cars.… I can't travel anymore. I can't go to events. I can't go on vacation, and I can't even play with my grandkids because of my injury and all this aggravation."). These claimed items of damages relate to Mr. Foster's bodily injuries sustained in the motor vehicle accident and are items of damages against the tortfeasor, claims he has already settled. These damages are no longer even at issue as they have been released.

Finally, regarding the KUCPA claim, Plaintiff <u>never communicated</u> with American Fire. Thus, there was no false unfair or misleading communication with him like the plaintiff was alleging in *Adkins*. Plaintiff cannot claim the damages he sustained are related to the conduct of American Fire.

---

[1] The plaintiff also alleged violations of the Kentucky Unfair Consumer Protection Act. *Adkins v. Shelter Mut. Ins. Co.*, No. CIV.A. 5:12-173-KKC, 2015 WL 1393583, at *2 (E.D. Ky. Mar. 25, 2015)

### D.  DELAY IS INSUFFICIENT TO MAKE A CASE FOR BAD FAITH

Alleging a delay in payment is not sufficient grounds to bring a bad faith claim. *Motorist Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997). Only when delay is solely for the purpose of effecting a lower settlement can there be potential for bad faith. *Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368, 376 (Ky. 2000). There was no way or reason for American Fire to extort here. In fact, American Fire actually over-paid Foster's wage loss claim as a result of having redacted tax returns not truly reflecting Plaintiff's income. Plaintiff cannot withstand summary judgment merely alleging American Fire delayed paying his claim.

## III.   PLAINTIFF POINTS TO NO DISPUTED MATERIAL FACTS

There are no disputed material facts here. Plaintiff's claim was never denied. The insurance contract was never breached. Plaintiff claims American Fire had access to his 2008 tax return in 2009, at which point it valued his weekly income. Plaintiff failed to mention this was a redacted version of his tax return submitted in connection with his no fault claim which actually resulted in Plaintiff being <u>overpaid</u> by American Fire.[2] The redacted version misled American Fire as it represented Plaintiff's gross receipts from his business instead of his net profits.

Remarkably, Plaintiff mentions American Fire did not disclose its consulting expert, Dr. William Baldwin. Of course it did not. The Federal Rules of Civil Procedure preclude him from knowing of consulting as opposed to testifying experts. Fed. R. Civ. P. 26(a)(2)(A). This type of desperate assertion illustrates precisely why litigation conduct, governed by court order and rules, is not considered in a Kentucky Bad Faith Claim. *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 522-23 (Ky. 2006). Plaintiff actually wishes to suggest that American Fire should pay

---

[2] It was not until June 25, 2014, when American Fire first obtained a copy of the unredacted tax returns revealing Plaintiff's actual income.

because it complied with the Rules of Civil Procedure promulgated by the United States Supreme Court.[3]

## IV. LEGAL AUTHORITY CITED BY PLAINTIFF DOES NOT PRECLUDE SUMMARY JUDGMENT IN FAVOR OF AMERICAN FIRE

The cases relied on by Plaintiff are either distinguishable or not relevant or binding. For example, Plaintiff heavily cites to the distinguishable case of *Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368 (Ky. 2000). However, the Kentucky Supreme Court in *Farmland* noted there is no unresolved legal issue in the case causing delay for interpretation by the courts. *Id*. (distinguishing *Empire Fire and Marin Ins. Co. v. Simpsonville Wrecker Service, Inc.*, 880 S.W.2d 886 (Ky.App. 1994), as it "dealt with an insured's right to bring a bad faith claim against its insurer when recovery, if any, under the insurance contract was dependent upon a legal issue of first impression in Kentucky courts"). Similar to *Empire Fire*, and distinguishable from *Farmland*, the parties in this case disputed interpretation of the "other insurance" clauses contained in both American Fire and Philadelphia Indemnity's policies. This was the first time a court interpreting Kentucky law had decided this precise question with the involved policy language.

Mr. Foster cites *Pedicini v. Life Ins. Co. of Alabama*, 682 F.3d 522 (6th Cir. 2012), in support of his case. However, in *Pedicini*, part of the claim was actually <u>denied</u> after a long history of the company paying and the contract <u>clearly</u> required payment. *Id*. The insurer in that

---

[3] Of note, Plaintiff's expert Dr. Stephanie Barnes in calculating her estimated loss wage number, Ms. Barnes inexplicably failed to consider Plaintiff's tax returns for 2003-2006- the years immediately prior to the loss, which showed an average net income of $5,166. (Deposition, Stephanie Barnes, p. 51, with a copy attached as **Exhibit 1**). Second, and even more confusing is why Dr. Barnes included Ms. Foster's income when calculating Mr. Foster's lost income for 2011 and 2012. (*Id*. at 57). Ms. Foster was at all times employed outside the home so the inclusion of her income is clearly erroneous. Third, and most importantly, Dr. Barnes conceded that there were other ways beyond the one she employed to calculate wage or loss of impairment to earn. (*Id*. at 52). American Fire simply did not need a testifying expert. Plaintiff's expert admitted she has no training in accounting or taxation. (*Id*. at 91). She further admits she is not an economist and, likewise, is not a numbers expert. (*Id*. at 53). However, Dr. Barnes did suggest that Mr. Foster was at the age where he might need to transition into another job other than heavy labor. (*Id*. at 36).

case refused to pay benefits due under the policy. *Id.* at 524. In Mr. Foster's case, the value of his damages was in dispute – by definition, "value" is variable. He even signed a release, approved by his attorney, that his claims were disputed.

Plaintiff cites *Paducah Area Public Library v. Terry*, 655 S.W.2d 19, 23 (Ky. App. 1983), to support its proposition that American Fire incorrectly computed Mr. Foster's future wages in the underlying case. However, *Paducah Library* has been addressed by a federal court sitting in Kentucky and was disregarded. *See Winston v. United States*, 11 F.Supp.2d 948 (W.D.Ky. 1998). Chief Judge Simpson noted *Paducah Library* was not binding on federal courts and allowed admission of economic evidence regarding present worth calculations. *Id.* at 949-50.

## V.   ALL PRE-SUIT ALLEGATIONS ARE BARRED

Kentucky has long recognized the prohibition against splitting a cause of action. *See e.g.*, *Kirchner v. Riherd*, 702 S.W.2d 33, 34 (Ky. 1985); *Rawe v. Liberty Mutual Fire Ins. Co.*, 462 F.3d 521, 529 (6th Cir 2006) (Sixth Circuit held a "plaintiff's first-party bad faith claims based upon defendant's conduct that allegedly occurred before [the plaintiff] filed her complaint … are barred by the doctrine of claim preclusion."); *Hays v. Sturgill*, 302 Ky. 31, 193 S.W.2d 648 (1946) (a plaintiff may not split up his cause of action and have it tried piecemeal). As the Kentucky Court of Appeals, then the state's highest Court, stated in *Hays*:

> **when a matter is in litigation, parties are required to bring forward their whole case**; and the plea of res judicata applies not only to the points upon which the court was required by the parties to form an opinion and pronounce judgment, but to **every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time**.

*Hays*, 302 Ky. at 34 (citation and internal quotation marks omitted).

Here, Plaintiff's bad faith claims, if any, should have been alleged in his initial Complaint filed in November, 2013. By not alleging bad faith in his initial Complaint, Plaintiff failed to

include "the portions of the claim due at the time of commencing that action." *Rawe*, 462 F.3d at 530. However, as the court recognized in *Rawe*, first-party claims based upon post-Complaint conduct are not barred by claim preclusion because those claims arose after the filing of the initial Complaint. *Id*. at 529-30.

## VI.   CONCLUSION

Plaintiff ignores his lack of compensable damages and the rigorous elements of the tort he asserts. American Fire, by Plaintiff's own admission, never even breached its contract. It never denied his claim. Instead, his claim was settled almost immediately after an expert witness testified differently than his report. That is good claims handling. Summary judgment in favor of American Fire is appropriate and Plaintiff's case must be dismissed.

Respectfully submitted,
**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**

/s/ Donald L. Miller, II
Donald L. Miller, II, Esq.
Paul J. Painter, Esq.
9300 Shelbyville Road, Suite 400
Louisville, KY  40222
Telephone: 502.423.6390
Facsimile: 502.423.6391
dmiller@qpwblaw.com

-and-

Heather M. McCollum, Esq.
2452 Sir Barton Way, Suite 300
Lexington, KY  40509
Telephone: 859.226.0057
Facsimile: 859.226.0059
hmccollum@qpwblaw.com
*Counsel for Defendant,*
*American Fire and Casualty Company*

8

## CERTIFICATE OF SERVICE

I certify that on October 19, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Donald L. Miller, II
*Counsel for Defendant,*
*American Fire and Casualty Company*