UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| ERNEST FOSTER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 13-426-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| AMERICAN FIRE AND CASUALTY | ) | **&** |
| COMPANY, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

After years of unsuccessfully negotiating with his insurance carriers to recover a certain sum of underinsured motorist benefits, Plaintiff Ernest Foster turned to civil litigation in hope of a remedy.  He filed claims for underinsured motorist benefits, as well as bad faith, a Kentucky Consumer Protection Act violation, and Kentucky Unfair Claims Settlement Practice Act violations, against Defendant American Fire and Casualty Company and another insurer.  Mr. Foster's underinsured motorist benefits claims have now been finally resolved, but his bad faith and statutory claims against American Fire are set for jury trial in late November.  Because the record contains genuine issues of material fact surrounding the remaining claims, the Court DENIES American Fire's pending motion for summary judgment and finds the case should proceed to trial.

**I**

In June 2008, Plaintiff Ernest Foster was injured in a car accident when his automobile

was struck by another driver, Mr. Gary Washabaugh. Mr. Washabaugh carried only minimum liability insurance limits of $25,000, but fortuitously for Mr. Foster, Foster carried underinsured motorist benefits ("UIM benefits") with both American Fire and Casualty Company and Philadelphia Indemnity Insurance Company. In the years following the accident, Foster, American Fire, and Philadelphia engaged in negotiations whereby Foster sought to be compensated for certain damages in excess of Mr. Washabaugh's $25,000 policy limit.

By November 2013, Mr. Foster's claims related to the Washabaugh accident remained unresolved, and he filed suit for the UIM benefits against both insurance carriers. [*See* R. 1-1.] The insurers removed the action to federal court, and several months later Foster filed an amended complaint adding allegations of bad faith in addition to his originally-pled claim for UIM benefits. [R. 26.] The Court subsequently bifurcated the bad faith and UIM claims and stayed discovery on the bad faith claims until after a final resolution of the UIM issue. [*See* R. 45.] By April 2015, Mr. Foster resolved all of his claims against Philadelphia [R. 85], but his litigation with American Fire actively continued. A jury trial on the UIM issue against American Fire was set for May 18, 2015 [R. 104; R. 110], but the parties reached a settlement agreement five days before jury selection was scheduled to begin. [R. 129.]

With the UIM benefits claims finally resolved, Mr. Foster and American Fire turned to litigating the bad faith allegations. After a year of discovery on those claims, American Fire now moves the Court for full summary judgment. [R. 188.] Foster, however, maintains genuine issues of material fact preclude summary judgment, and he asks the Court to submit the remaining extracontractual claims to a jury. [R. 195.]

## II

### A

When sitting in diversity, a federal court applies the substantive law of the state in which it sits. *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 566 (6th Cir. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). However, when considering summary judgment arguments, a federal court applies the standards of Federal Rule of Civil Procedure 56 rather than Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr. Inc.*, 807 S.W.2d 476 (Ky. 1991). *See Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993). Under Rule 56, summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact. *See* Fed. R. Civ. P. 56(c). A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe." *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Morales v. American Honda Motor Co., Inc.*, 71 F.3d 531, 535 (6th Cir. 1995) (quoting *Liberty Lobby*, 477 U.S. at 255).

**B**

Kentucky law recognizes four categories of bad faith claims against insurance companies: (1) common law third-party bad faith, which may occur when a liability insurer fails to settle a tort claim against its insured; (2) common law first-party bad faith, which occurs when an insurer refuses to pay the claim of its own insured under a first-party policy provision; (3) first-party bad faith under the Kentucky Consumer Protection Act ("KCPA"); and (4) first-party and third-party bad faith under the Kentucky Unfair Claims Settlement Practices Act ("KUCSPA"), which "imposes what is generally known as the duty of good faith and fair dealing owed by an insurer to an insured" and sets forth a list of particular duties and practices which constitute unfair claims settlement. *See Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 515 (Ky. 2006) (detailing the KUCSPA); *Rawe v. Liberty Mutual Fire Ins. Co.*, 462 F.3d 521, 526-27 (6th Cir. 2006) (describing the four categories of bad faith claims). In his first amended complaint, Plaintiff Ernest Foster raises claims under three of these categories: common law first-party bad faith, first-party bad faith under the KUCSPA, and a KCPA violation. [R. 26 at 7-10.] American Fire seeks summary judgment on all of Mr. Foster's claims. [R. 188-1.]

**1**

The Court first addresses the common law and statutory bad faith claims. "A single test under Kentucky law exists for the merits of bad-faith claims, whether brought . . . under common law or statute." *Rawe*, 462 F.3d at 527. This test is set forth in *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993), which has been described as "the leading case on 'bad faith' in Kentucky" and "the culmination of the development of 'bad faith liability in [Kentucky] jurisprudence." *See Rawe*, 462 F.3d at 527 (quoting *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 99 (Ky.

2000)). Pursuant to *Wittmer*, an insured alleging bad faith against his or her insurance company must prove three elements in order to prevail:

> (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*See* 864 S.W.2d at 890.

A plaintiff cannot bring a private cause of action "for a mere technical violation" of the KUCSPA. *Rawe*, 462 F.3d at 533. Rather, "a condition precedent to bringing a statutory bad faith action is that the claimant was damaged by reason of the violation of the statute." *Id.* (quoting *Motorists Mutual Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997)). Put another way, "[b]efore the cause of action [for bad faith] exists in the first place, there must be evidence sufficient to warrant punitive damages." *Wittmer*, 864 S.W.2d at 890; *see also Holloway v. Direct Gen. Ins. Co.*, ___ S.W.3d ___, 2016 WL 5245694 (Ky. Sept. 22, 2016) (noting a bad faith claim in Kentucky is essentially a punitive action). The Sixth Circuit has described this prerequisite as a "high threshold standard that requires evidence of intentional misconduct or reckless disregard of the rights of an insured or a claimant by the insurance company that would support an award of punitive damages." *Phelps v. State Farm Mutual Auto. Ins. Co.*, 736 F.3d 697, 703 (6th Cir. 2012) (internal quotation marks and citations omitted). Notably, the second and third elements of the *Wittmer* test also turn on evidence similar to this threshold inquiry. *See id.* at 704 (citing *Cobb King v. Liberty Mutual Ins. Co.*, 54 F. App'x 833, 838 (6th Cir. 2003)).

American Fire presents three arguments in support of summary judgment on Mr. Foster's common law and statutory bad faith claims. First, American Fire contends relief under *Wittmer*

5

is unattainable because Mr. Foster's claim was never denied, and actual denial of the claim is "inherent in the requirements for bad faith." [R. 188-1 at 20-21.] While the *Wittmer* standard does speak specifically to an insurer's basis for "denying the claim," *see* 864 S.W.2d at 890, American Fire's argument is at odds with the way the *Wittmer* test is now applied. Bad faith litigation often occurs even after an insurance company ultimately settles a disputed claim. *See, e.g.*, *Phelps*, 736 F.3d at 704 ("The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that *in the investigation, evaluation, and processing of the claim*, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable.") (emphasis added); *Adkins v. Shelter Mutual Ins. Co.*, No. 5:12-173-KKC, 2015 WL 1393583, at *8-9 (E.D. Ky. Mar. 25, 2015) (noting the Sixth Circuit's *Phelps* decision indicates an actual denial is not an absolute prerequisite to pleading damages); *Smith v. Liberty Mutual Ins. Co.*, No. 3:15-cv-00034-TBR, 2015 WL 7458641, at *1 (W.D. Ky. Nov. 23, 2015) (explaining that the insurer paid the full policy limits and settled the plaintiff's breach of contract claim before the Court considered the insurer's alleged bad faith in "investigating and settling Smith's claim").

      Second, American Fire maintains Mr. Foster may not recover on his bad faith claims because he has not sufficiently proven damages. As stated above, a plaintiff cannot recover "for a mere technical violation" of the KUCSPA; instead, a plaintiff must show that he or she was actually damaged by the insurer's actions. *See Rawe*, 462 F.3d at 533. American Fire contends that some of the damages Mr. Foster has suffered result solely from the original car accident, such as medical expenses and wage loss, rather than from American Fire's alleged bad faith. [R.

6

188-1 at 13-14.] Also, American Fire maintains Mr. Foster's purported financial and emotional distress do not amount to "actual damages." [*Id.* at 14-18.]

With respect to this argument, the Kentucky Supreme Court has repeatedly found that an insured must "prove that the conduct of the insurers was outrageous, because of an evil motive or reckless indifference to his rights." *Glass*, 996 S.W.2d at 452. Pursuant to the relevant case law:

> mere delay in payment does not amount to outrageous conduct absent some affirmative act of harassment or deception. In other words, there must be proof or evidence supporting a reasonable inference that the purpose of the delay was to extort a more favorable settlement or to deceive the insured with respect to the applicable coverage.

*Id.* at 452-53 (internal citations omitted). Further, with regard to damages for mental distress in a statutory bad faith case, a plaintiff must present "either direct or circumstantial evidence from which the jury could infer that anxiety or mental anguish in fact occurred. The proof must be clear and satisfactory; and evidence based on conjecture will not support a recovery for such damages." *Id.* at 454.

American Fire points to several federal district court cases which have applied this Kentucky Supreme Court guidance to grant summary judgment in favor of insurance companies. For example, in *Minter v. Liberty Mutual Fire Insurance Company*, the court determined the insured plaintiff failed to put forth adequate proof of emotional and financial damages to survive summary judgment. No. 3:11-cv-00249-S, 2014 WL 4914739, at *4-5 (W.D. Ky. Sept. 30, 2014). The *Minter* plaintiff conceded she did not suffer financial damages as a result of the insurer's alleged bad faith. As for emotional and mental distress damages, the court found the *Minter* plaintiff alleged only "some non-specific emotional distress and embarrassment" amounting to nothing more than "evidence based on conjecture." *Id.* at *5. Similarly, in *Smith*

7

*v. Liberty Mutual Insurance Company*, the court granted summary judgment in favor of the insurer because the plaintiff's only damages resulted from either the accident itself or a bankruptcy proceeding she had filed prior to the accident. 2015 WL 7458641, at *3-4.

Conversely, Mr. Foster relies on *Adkins v. Shelter Mutual Insurance Company*, wherein the district court declined to enter summary judgment against a plaintiff who cited to a single deposition response as proof of her alleged damages. 2015 WL 139583, at *13-14. When asked by her attorney if the insurer's actions had caused her emotional distress, the plaintiff responded, "yeah." *Id.* at 14. While the court recognized this testimony "may not constitute clear evidence of emotional distress," the court found the deposition response sufficient to survive the insurer's motion for summary judgment. *Id.* (citing *Indiana Ins. Co. v. Demetre*, No. 2013-CA-338-MR, 2015 WL 393041, 2015 Ky. App. Unpub. LEXIS 846 (Ky. App. 2015)). The Kentucky Court of Appeals case upon which the *Adkins* court relied specifically declined to require a plaintiff bringing a statutory bad faith claim to prove emotional distress by expert medical or scientific proof. *Demetre*, 2015 Ky. App. Unpub. LEXIS 846, at *36. Instead, the court found that "emotional distress may be proven by direct or circumstantial evidence, including the plaintiff's testimony alone." *Id.* The Kentucky Supreme Court has granted discretionary review of the Kentucky Court of Appeals' *Demetre* opinion, and that review remains pending. *See Indiana Ins. Co. v. Demetre*, 2015-SC-000107-DG, 2015 Ky. LEXIS 1968 (Oct. 29, 2015).

While *Minter*, *Smith*, *Adkins*, and *Demetre* serve as persuasive authority, none of these decisions are ultimately binding upon the Court. *See, e.g.*, *States v. Simpson*, 520 F.3d 531, 535-36 (6th Cir. 2008) (explaining that, in the absence of state law construing a state statute, federal courts must predict how the state's highest court would rule, and noting that "ordinarily a state's

8

intermediate appellate court decisions are the best authority in the absence of any supreme court precedent"); *Liebisch v. Sec'y of Health & Human Servs.*, 21 F.3d 428 (6th Cir. 1994) ("District court opinions have persuasive value only and are not binding as a matter of law."). Thus, the Court notes the parties' arguments about the above-described cases but makes its decision with binding Sixth Circuit and Kentucky Supreme Court case law, as well as the Federal Rules of Civil Procedure, at the forefront.

In the present case, Mr. Foster has alleged various financial and emotional damages in his complaint. For instance, he references the attorneys' fees, emotional distress, inconvenience, financial distress, long term uncertainty as to his financial future, and unnecessary litigation expenses he has incurred. [R. 26.] He also sets forth a significant description of his alleged financial and emotional damages in his responses to American Fire's interrogatories. [R. 195-23 at 11-12.] Regarding financial damages, Mr. Foster states:

> The Plaintiff has incurred litigation costs ($3,406.69), filing fees ($260.76), attorney's fees, ($36,600), lost interest, as well as inconvenience (including costs to travel to/from meetings, depositions, court dates, medical examinations, etc.), financial distress, and emotional distress.

[*Id.*] Mr. Foster goes on to describe the following with respect to emotional damages:

> Plaintiff's inconvenience, and emotional and mental pain and suffering includes dealing with the claim process for a number of years; dealing with the litigation process for a number of years; attending meetings with lawyers; preparing for and attending depositions; responding to requests for information; feeling like I was being treated like a criminal; not knowing why the insurance company would not pay my claim; not receiving compensation from the insurance company while I was unable to work and not earning income; having to hire lawyers to file a lawsuit against the insurance company; having to involve my friends and family in the litigation process, which was embarrassing and stressful; making myself available for medical examinations for the insurance company, which was embarrassing and stressful; being unsure of planning for the future with respect to unknown finances because no insurance payment was forthcoming; compounding

of the pain and suffering I was dealing with from my physical injuries; feeling like my heart would flop or flutter because of stress.

[*Id.* at 12.]

Based on these interrogatory responses, Mr. Foster's bad faith claims survive American Fire's summary judgment motion. *See* Fed. R. Civ. P. 56(c)(1)(A) (noting a party may cite to interrogatory answers as grounds for contesting summary judgment). Mr. Foster's allegations about his financial damages are distinct from both the *Minter* and *Smith* plaintiffs' financial loss claims. In *Minter*, the plaintiff conceded she suffered no financial damages, 2014 WL 4914739, at *4-5, and in *Smith*, the plaintiff's financial damages clearly stemmed from a bankruptcy proceeding that began prior to the plaintiff's car accident. 2015 WL 7458641, at *3-4. Unlike the plaintiffs in those two cases, Mr. Foster has described specific amounts of financial loss allegedly attributed to American Fire's settlement conduct.

Pursuant to *Adkins* and *Demetre*, Foster has also put forth sufficient evidence of emotional distress. *See Adkins*, 2015 WL 139583, at *13-14; *Demetre*, 2015 Ky. App. Unpub. LEXIS 846, at *36 (finding the plaintiff's testimony alone sufficient to prove emotional distress). But even if, upon its discretionary review, the Kentucky Supreme Court were to overturn *Demetre* and find expert testimony a necessary prerequisite to proving emotional distress, the Court's decision stands. Viewing the record in the light most favorable to Mr. Foster, denying summary judgment on the basis of Foster's alleged financial damages alone is appropriate. *See Morales,* 71 F.3d at 535.

Finally and relatedly, American Fire contends the record is devoid of proof of outrageous conduct and thus precludes a jury verdict of bad faith. According to American Fire, the only evidence in the record that would support a bad faith claim is the delay Mr. Foster experienced in

obtaining a settlement payment. [*See* R. 188-1 at 21-23.] Under Kentucky law, "mere delay in payment does not amount to outrageous conduct absent some affirmative act of harassment or deception." *Glass*, 996 S.W.2d at 452. However, "[w]hile a 'mere delay' does not constitute bad faith, courts have found delays in the range of eighteen months to three years 'may serve as evidence of bad faith.'" *Argotte v. Northwestern Mutual Life Ins.*, 99 F. Supp. 3d 726, 733 (W.D. Ky. 2015) (quoting *Phelps*, 736 F.3d at 706-07 (collecting cases)).

Mr. Foster has presented evidence of an approximately seven year delay between the date of his car accident, June 8, 2008, and the resolution of his UIM claim in the spring of 2015. [*See* R. 129.] Further, Mr. Foster points to additional evidence in the record to support a finding of bad faith, such as American Fire's failure to schedule requested medical examinations and American Fire's requests for duplicate information or authorizations. [*See* R. 195-23 at 8-9]; *Phelps*, 736 F.3d at 706-07 (describing similar actions as possible delay tactics, "troubling claims-handling practices," and ultimately, inferences of bad faith). This evidence warrants a jury trial.

The Sixth Circuit, interpreting Kentucky law, has noted that repeated requests for records and an insurer's apparent "heightened degree of scrutiny" surrounding a particular claim could give rise to an inference that the insurer sought to be thorough and fair. *Estate of Riddle v. Southern Farm Bureau Life Ins. Co.*, 421 F.3d 400, 408 (6th Cir. 2005). The same behavior, however, could raise an inference that the insurer was specifically searching for a justification to deny coverage. *Id.* "Choosing between two reasonable inferences is the function of the jury."

11

*Id.* Like in Estate of Riddle, the evidence to which Mr. Foster points could give rise to different inferences. Accordingly, the Court denies summary judgment on the bad faith claims.[1]

### 2

American Fire also seeks summary judgment on Mr. Foster's claim for a violation of the Kentucky Consumer Protection Act. [*See* R. 26 at 8-9.] To succeed on a KCPA claim, an insured must demonstrate "some evidence of unfair, false, misleading or deceptive acts and does not apply to simple incompetent performance of contractual duties unless some element of intentional or grossly negligent conduct is also present." *Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287, 291 (Ky. 1991). Kentucky courts have generally found "the question of whether an insurer's actions rise to the level of unlawful conduct under the KCPA to be a question of fact." *Rawe*, 462 F.3d at 531-32. Notably, the language of the KCPA allows an insured to bring an action only when he or she "*suffers any ascertainable loss* of money or property, real or personal," as a result of the insured's unlawful practice. KRS § 337.220(1) (emphasis added); *Stevens v. Motorists Mutual Ins. Co.*, 759 S.W.2d 819, 820 (Ky. 1988) (finding the purchase of an insurance policy is a "service" intended to be covered by the KCPA). As one Western District of Kentucky court noted, this requires plaintiffs to produce "evidence from which a factfinder could find or infer that the plaintiff suffered an actual loss." *M.T. v. Saum*, 7 F. Supp. 3d 701, 704-05 (W.D. Ky. 2014) (citation omitted). American Fire seeks

---

[1] Notably, this conclusion remains sound even if the testimony of Mr. Foster's expert, Mr. Stuart Setcavage, is excluded, as the record contains sufficient evidence to justify proceeding to trial with or without the expert testimony. The propriety of Mr. Setcavage's testimony is the subject of a separate motion filed by American Fire [*see* R. 189], which the Court will address by subsequent order.

summary judgment on the KCPA claim based on Mr. Foster's alleged failure to demonstrate a compensable injury under KRS § 367.220. [R. 188-1 at 18-20.]

In Mr. Foster's first amended complaint, he claims he "has ascertained a loss of money" as a result of American Fire's actions; that he "has suffered inconvenience, and emotional and mental pain and distress;" and that he "faces long term uncertainty as to his financial future and is forced to unnecessarily incur expenses related to this lawsuit, which is causing and has caused inconvenience, and emotional and mental pain and suffering." [R. 26 at 9.] Despite this, American Fire maintains Foster's only real allegation of financial loss is the money he has spent on attorneys' fees, which do not amount to ascertainable loss under KRS § 367.220. [R. 188-1 at 18-20.]

The Court is aware of no decision specifically addressing whether attorneys' fees constitute an ascertainable loss for purposes of KRS § 367.220(1) and the KCPA when an insured files suit against his insurer of his own accord. Mr. Foster relies on *Indiana Insurance Company v. Demetre* for the proposition that "attorney fees incurred due to unfair, fraudulent or tortious conduct by an insurer is an ascertainable loss." *See* 2015 Ky. App. Unpub. LEXIS 846. As noted above, however, that Kentucky Court of Appeals opinion—which remains pending before the Kentucky Supreme Court—is not a binding decision. And moreover, *Demetre* is factually distinct from Mr. Foster's case. In *Demetre*, the Kentucy Court of Appeals explained that attorneys' fees do constitute an ascertainable loss where an insured is forced to incur those fees to *defend* a particular action. *See id.* The *Demetre* insurer filed a declaratory judgment action against the insured, which the insured was essentially forced to litigate. *Id.* at *25-27.

Here, Mr. Foster has incurred his attorneys' fees by virtue of a lawsuit he filed of his own accord.

Still, the Kentucky Supreme Court has indicated that the KCPA is "a statute which has the broadest application in order to give Kentucky consumers the broadest possible protection for allegedly illegal acts." *Stevens,* 759 S.W.2d at 821. And another recent Kentucky Court of Appeals decision reinforces the propriety of construing the "ascertainable loss" requirement broadly. In *Complete Automotive Repair Services v. Capps*, the Kentucky Court of Appeals noted the general lack of case law addressing the meaning of "ascertainable loss" within the context of KRS § 367.220. No. 2012-CA-002145, 2015 WL 2445911, at *5 (Ky. App. Dec. 10, 2015). The *Capps* defendant sought to avoid a KCPA violation by arguing that "an 'ascertainable loss' cannot be proved in the absence of a showing by the plaintiff that he has incurred out-of-pocket expenses/damages as a result of the alleged violation of the KCPA." *Id.* The Kentucky Court of Appeals disagreed with the defendant, noting that "loss" and "damages" are not always synonymous and holding:

> We conclude that a person is not required to allege a specific amount of actual damages that he has already incurred as out-of-pocket expenses to make out a prima facie case under KRS 367.220. If the consumer proves that he has purchased an item that is different from or inferior to that for which he bargained, the 'ascertainable loss' requirement is satisfied.

*Id.* Ultimately, the *Capps* plaintiff was able to show that he received something other than what he bargained for: he received, as a result of unfair or deceptive trade practices, an inoperable and damaged truck instead of a working vehicle in need of minor repairs. *Id.* Because of this, the court upheld the trial court's conclusion that the plaintiff had suffered an ascertainable loss for purposes of the KCPA. *Id.*

Thus, even if Foster's claimed attorneys' fees do not constitute an ascertainable loss for purposes of the KCPA, the case law suggests that Foster has sufficiently pointed to additional "evidence from which a factfinder could find or infer that [he] suffered an actual loss." *Saum*, 7 F. Supp. 3d at 704-05. A jury could reasonably determine that a UIM benefits policy under which it would take Foster almost seven years to recover would constitute "an item that is different from or inferior to" that for which Mr. Foster bargained. *See Capps*, 2015 WL 2445911, at *5. In light of this, as well as the Kentucky Supreme Court's clear emphasis on interpreting the KCPA broadly, the Court finds Foster's KCPA claim, like the common law and statutory bad faith claims, survives American Fire's motion for summary judgment.

### III

For the foregoing reasons, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Defendant American Fire's motion for summary judgment [R. 188] is **DENIED**.

This the 10th day of November, 2016.

Gregory F. Van Tatenhove
United States District Judge